Tilghman C. J .
Joseph Gable, William Smith,, and Anthony Taylor, were indicted for the murder of Isaac Brasington. The jury acquitted Taylor, but as to Gable and Smith, their verdict was delivered in the following words, “ not guilty of murder, but guilty of manslaughter.” A motion has been made in arrest of judgment, in support which two reasons have been assigned. 1st. That the diet does not find the defendants guilty of a felony, 2. That . the verdict is void, for uncertainty, because it does not as *424 certain whether the manslaughter was voluntary or invo lunthry. ' .
'Ú There is not much weight in the first objection. The clerk makes a short minute' of the finding of the jury, from which the record may be made up in form. The intention Qf tge jury js sufficiently manifest, when they say that the defendant is guilty of manslaughter. * Perhaps such a finding ,máy not be strictly proper,,after having found that;the defendants were not guilty of murder, because manslaughter is included in murder. But this • criticism is not now regarded, though formerly it was supposed, to be entitled to some consideration in England. Even there, .however, we find, from the 4th vol; of Chi tty' on Criminal Law, 642, that •the common practice now is, to enter the verdict precisely as was done in the present instance; “ not guilty of murder, but -guilty of manslaughter.” Our practice has been the same ; and the reason by which it is justified, applies equally to both countries; viz. that the minute entered by the clerk, is a mere meiporandum -for his future guidance in making up the record, and. sufficiently ascertains the meaning of the jury. . .
' 2. The second objection, considering the present state of the criminal law, in Pennsylvania, is of considerable importance, and must be thoroughly examined. It is founded on an. Act of Assembly « for tfie better preventing of crimes, &c.,” passed the 22d April, 1794, The great object of that Act, was, to. mitigate the penal law, and with that view, it established four different grades'of homicide ; murder of the first, and second- degree, and manslaughter-voluntary, and involuntary. To each of these were affixed different punishments, and death was inflicted on murder of the first degree only. The form of indictment for murder, has not been changed in consequence of this change of the law. There ■'was'no necessity for any alteration, and indeed it seems to be supposed by the Act, that there would" be none, because the jury are directed to ascertain by their verdict, <>• whether it be murder of thefirst or second degree.” But with regard to manslaughter, the case is different.', The jury are not directed to say, orí a general indictment for manslaughter, whether .it be voluntary or involuntary, but' it is specially provided, that involuntary manslaughter may be indicted and *425 punished as a misdemeanour. By the 7th section of the Act, whoever shall be convicted of any voluntary manslaughter, shall be sentenced to undergo an imprisonment at hard labour, and solitary confinement, for any time not less than two nor more than ten years. And by the' 8'th section, “wheresoever any pef6on shall be charged with involuntary manslaughter, happening in consequence of an unlawful act, itjshall and may be lawful for the Attorney General, withjthe. leave of the Court, to wave the felony, and to proceed against, and charge such person with a misdemeanour, and to' give in evidence any act or acts of manslaughter, and such person, on conviction,, shall be fined and imprisoned, as in cases of misdemeanour, or the Attorney General may charge both offences in the same in.dictment, in which case, the jury may acquit the party of the one, and find him guilty of the other charge.” Thus we see, that involuntaryhnanslaughter is converted into a misdemeanour, and punished accordingly. If that be the case, one who is indicted of murder, cannot be convicted of involuntary manslaughter, because it is well settled, that there cannot be a conviction of a misdemeanour on an indictment for felony. Therefore,'when on an indictment for murder, the jury find that the defendant is guilty of manslaughter, it must be understood, such manslaughter as is felonious, which can be no other than voluntary manslaughter!' That the law has been so considered by this Court, I shall shew hereafter, when I speak of the practice, as it appears by the records of the Court of Oyer and Terminer. But at present, I am considering the matter as if it were a new question. If involuntary manslaughter be no longer a felony, it could with no plausibility be contended, that these defendants could be convicted of that offence, on the present indictment. But it is asserted by the counsel for the defendants, that although the attorney general, with the leave, of the Court, may proceed against involuntary manslaughter, as a misdemeanour, yet he is not bound to do so, but may still prosecute it as a felony, in which case, the person, convicted of it, would be subject to-the punishment prescribed in the 9th section of the Act of Assembly before mentioned. By that section, all claim to dispensation from punishment by beneflt of clergy is abolished, and persons convicted of. any felony before that time deemed clergyable, were made subject to an imprison *426 ment at hard labour and solitary confinement in the gaol ■and penitentiary house of Philadelphia,'for any term not less than six months, and not more than two years, and to be tréated and dealt, with as is directed in the Act to reform the penal laws of this State ; except in those cases where some other "specific penalty is prescribed by thé Act aforesaid, (to reform the penal laws of'this State,) or by the said Act, (for the .better preventing.of crimes £i?c.) Now, as involuntary manslaughter was formerly a clergyable felony, it cannot be denied that it remained subject to punishment under the 9th section, unless- it was changed into a misdemeanour, and made subject to fine and imprisonment as such, by the 8th section. But if it was so changed, it was not punishable under the 9th section. The question then will be, what is the true construction >of the 8th section ? Was it intended that involuntary manslaughter might be prosecuted, either asa felony, or a misdemeanour, at the pleasure of the attorney general, or that it should be prosecuted as a misdemeanour only? The expressions of ,the law ar,e, that it shall and may be lawful, for the attorney general, with the leave of the. Court, to wave-The felony, &c. The Attorney General is not positively directed ttrwave the felony, but I apprehend that- the nature of this 'clause is imperative. When it is said that he may wave the felony, it is intended that he shall wave it. This is not,a new construction of the word may, and if there ever was a case in which that word ought to receive an imperative signification, it is the present. . Involuntary manslaughter is not a great crime ; in most cases, it rather deserves the name'of misfortune; and it would, be singular indeed, if it. were to remain subject to infamous punishment, in a system avowedly introduced for the purpose of softening the rigour of the criminal law. And what would be still more singular, involuntary manslaughter, if considered as a clergyable felony, would be subject to a moré disgraceful and oppressive imprisonment, though less in point of duration, than voluntary manslaughter, which is a much greater crime. In the year 1796, the State of Virginia tríade a law.respecting murder and manslaughter, which appears to be a copy of ours. The substance of it will be found in 4 .Tucker’s Blackstone, 192, 193, notes ; and there we have the opinion of Judge Tucker, that by virtue of that law, involuntary *427 manslaughter was only a misdemeanour. The manner in which our Act of Assembly is drawn, shews that it was. not intended any person should be convicted of involuntary roan-slaughter, unless the indictment charged him with it expressly. Murder is divided, into the first and second degreet yet the indictment is for murder generally, and'the jury are directed to ascertain the degret ; hut there is no •such direction as to voluntary and involuntary manslaughter. On the contrary, it is provided, that the defendant may be charged in the same indictment, both with voluntary and involuntary manslaughter, and the jury may acquit hi.m of one, and find him guilty of. the other. Now, if it had been intended that involuntary manslaughter might be prosecuted as a felony, at the discretion of the attorney general, it would have been more consistent, if in such case, the jury had been directed to ascertain by their verdict, whether the manslaughter was voluntary or involuntary, as they were to ascertain whether murder was of the first or second rh. gree. if it be asked what is to be done, on an indictment for murder, if the evidence discloses a case of involuntary manslaughter, I answer, that the defendant should be acquitted. Nevertheless, he might afterwards be indicted for a misdemeanour. I have searched the records of all the Courts of Oyer and Terminer, held by the Judges, of this Court, and by the' Judges of the Court qf Common Pleas, for the city and county of Philadelphia, since the making of the Act of April, 1794. I will not say, that practice, without debate, should be supported, where it was manifestly against law. Yet certainly in a case of doubtful construction, such practice would be entitled to great weight; for it cannot be supposed, that judgment would be given in criminal cases, under a new system, without consideration. The records which I have mentioned, shew, that in three instances, where the indictments were for murder, and verdicts “ not guilty of murder, but guilty of manslaughter,” the Judges of the Supreme Court passed judgment as directed by law, in cases of voluntary manslaughter. And three similar-judgments appear to hatfe been given, under similar circumstances, by the Judges of the Court of Common Pleas. But it does not appear, that in any instance, a verdict of involuntary manslaughter has been given on an indictment for murder, *428 or on an indictment forfelonious-manslaughter. It has been made a question, in the argument of this case, what constituted manslaughter, within the meaning of the Act of Asscnibly ? I do not know that the case before the Court requires an answer to that question, yet, as it has been raised, .. . ■ , .' , - ,. , it may be proper to take some notice of it. Murder of the first and second degree, are defined by the Act, but no definition is given of voluntary or involuntary manslaughter ; of course they are considered as crimes, whose nature was previously ascertained, and we are to seek for their definition in 'books of the best authority. There are some cases of voluntary manslaughter, where there was a positive intent to kill; one of these is where one finding a man in bed with his wife, in a transport of passion, puts the adulterer to death, with a sword or pistol: Rut I take it, that evidence of a positive intent to kill is not necessary, in order to constitute the crime of voluntary manslaughter. • It is sufficient, if there be such acts of violence as may be expected to produce great bodily harm. ■ On the contrary, involuntary manslaughter is where it plainly appears that neither death-nor any great bodily harm was intended, but death is accidentally caused by some unlawful act, or an act not' strictly lawful in .itself, but done in an unlawful manner and without due caution, This doctrine is exemplified, in -the cases put, in 4 Black. 192, and 1 Hale, 472, 473; such as, where'two men are playing at an unlawful game, and one of them, unintentionally kills the other ; or, where a workman throws down a stone or piece of-timber, into the street of a populous city, even though he calls out to give warning ;' or, where one i's hunting in the park of another, without license, and his arrow, glancing from,a tree, kills another. In all these cases, it is evident, that neither death, nor bodily harm of any kind were intended, yet the acts being either unlawful of themselves, or not done with sufficient caution, they are held to be cases of manslaughter. These principles, applied to the case of the defendants, who most undoubtedly intended very great bodily harm to the person who was killed, justified a verdict of voluntary manslaughter. Upon the whole, I ám of opinion, that the verdict which has been recorded, is to be considered as a conviction of voluntary manslaughter, and that there is no cause for arresting the judgment.
*429 Gibson J.
I agree the verdict is good in form; but for reasons different from those of the rest of the Court—.it is good as a conviction of involuntary manslaughter only.' It seems to me, the Legislature intended, by the Act of 1/94, to punish the offence of manslaughter generally, as a felony, theretofore clergyable; and at the same time, to distinguish the mild, as well as the more aggravated cases, as exceptions; and to annex to these a punishment, specifically graduated to the degree of their guilt; consequently, a conviction which does not bring the case within any of the exceptions, must be referred to that part of the Act, which provides for the crime at large. The Legislature intended ,to make the same distinction, as to degrees of guilt, in manslaughter, that they have indisputably made in murder, although not, as in the latter, by expressly distinguishing between the different degrees : and murder is always charged generally, without distinction as to the degree.. The difference of degree, in either species of homicide,, was marked by the Legislature, not to produce a change in the nature of thb offence, and á correspóndent alteration in the form of the indictment, but to indicate a difference as to the quantum of the punishment. Where the prisoner is convicted of ,murder, the degree of the offence is ascertained by the jury, whose duty it is to designate it in the verdict: and, álthougb, when the Legislature come to distinguish between the different kinds of manslaughter, the same provision is not repeated, it must necessarily be understood to be implied: for, as there incontestibly is a difference in the degree of punishment^ the degree of guilt must be ascertained, either by the form of the indictment, or by a special designation in the verdict. If by the former, there never could be a conviction of manslaughter on a count for murder, but only on a special count for manslaughter, and that, too, charging a particular degree of the offence. But the practice in every district of the State has uniformly been to sustain such a conviction. The truth is, that no alteration in the form of the indictment was intended in any cáse, except when the homicide should be prosecuted as a misdemeanour. The conclusion, therefore, is inevitable, that the jury must specify the degree of the offence, to authorise the Court to inflict the punishment for voluntary manslaughter ; unless, indeed, none but voluntary manslaughter, *430 can be punished as afelonya position, which, with great de» ference to the opinion of my brethren, I think cannot be ‘maintained. The Act authorises the Attorney General, where .the prisoner is charged only with involuntary manslaughter, to wave the felony, by the leave of the Court, and proceed onjy, for a misdemeanourbut suppose that he refuses, or the Court declines to permit him to wave the felony—and, if without leave, he goes for a misdemeanour, the'Court may quash —and the prisoner is, as he must be, indicted for the felony, would he on conviction receive the punishment of voluntary manslaughter, or go entirely without punishment ? The first is out. of the question ; for the Act is explicit in imposing an aggravated punishment on'voluntary manslaughter, as a distinct and an aggravated species of the crime in contradistinction to involuntary manslaughter, which, it expressly defines to be that species which amounts to felonious slaying, only because it happens in consequence of an unláwfyl Act; and which, when prosecuted as a felony, constitutes the middle, and general class of the offence, the highest and lowest being exceptions, and punishable as such. The Act obviously makes a distinction between them, as grades of crime, although the distinguishing features, by which either case is to be ascertained to belong to the one or the other, are not clearly described ; but,- of th.is hereafter. The distinction, between voluntary and involuntary manslaughter; is made in express terms. But, the latter is to be susceptible of farther distinction as to the. nature of the punishment, at the discretion of the Attorney General and the Court, regard being had to the circumstances of aggravation and mitigation, that should appear in the case. Upon what is the discretion, of the Attorney General and of the Court to be exercised ? Not upon the question whether the offence charged be the voluntary or the involuntary species of the offence : the Legislature put the case of a manslaughter conceded to be involuntary, and where the prisoner is charged with nothing more. This certainly carries with it an assertion of a right to prosecute a prisoner so charged to conviction for the felony. But it may be asked, if on such conviction, the punishment for voluntary manslaughter cannot be inflicted, by what law can the prisoner be punished at all ? The answer meets us at the threshold. The ninth section of the Act, after declaring that the benefit of clergy, shall *431 be abolished in all-cases, provides “that any person convicted of any felony, heretofore clergyable, shall undergo an imprisonment at hard labour in the gaol and penitentiary of Philadelphia for any term, not less than six months, and not more than two years; except, when some specific penalty is prescribed by the Act aforesaid.’ Now manslaughter was a felony, theretofore, clergyable ; and, I thinkit clear, that this is the section' which provides for the punishment Of the of-fence at large, the sixth section providing specifically for a particular and aggravated species. This conclusion is strengthened by considering that the maximum of. the term of imprisonment, imposed by the ninth section on felonies formerly clergyable, is exactly the minimum of the term of imprisonment for voluntary manslaughter. From this, it seems the Legislature intended to establish a graduated scale of punishment, exactly adapted to the demerit of each particular offender. In the case, at bar, the prisoners were indicted of murder, and were convicted of manslaughter generally, which is undoubtedly good ; but the punishment ought to be inflicted under that section which provides for manslaughter as a general offence, and not under that, which provides for a particular species of it. If, from necessity, we are bound to consider a general conviction, as a conviction of the worst species, what sentence should we have had to pass, if the jury had found > the prisoners guilty of involuntary manslaughter, in express terms ? We certainly could not Have inflicted the more aggravated punishment; and if not, under ’ what other section than that which speaks of clergyable felonies, could we have sentenced them ? In fact, all the provisions of the Act—which is remarkably well penned—perfectly accord with each other. If the Attorney General should think the case attended with sufficient circumstances of mitigation, he may, with the leave of the Court, indict for a misdemeanour. On the other hand, if he thinks the offence amounts to voluntary manslaughter or something worse, he may indict either for murder, or manslaughter generally, or both; or, if he has doubts, whether the prisoner should be punished for a felony or a misdemeanour, he may add a count for the latter to a count for manslaughter or murder t thus leaving the field of inquiry entirely open to the jury, and putting it in their power, accordingly as the proof may turn out, to con *432 vict of murder of the first or second degree : of manslaughter Qf the more aggravated species ; of the offence generally ; or °f tb® mildest species of all under the form of a misdemeanour, But the degree of the general offence must be indicated by the verdict, that it may receive its appropriate punishment, j see' nothing to alarm us, in this discretionary power of the Attorney General, as it can never be exercised, except in mitigation of punishment, and is-therefore merciful in its operation. On the other hand, it can never be abused in skreening from due punishment, .as it can be exercised only with the consent of the Court. But subject to the restriction contained in the Act, that officer^ undoubtedly, has it, let the consequences be as they may. In construing a statute, I have no objection, that “ may” shall be taken to mean <£ shall,” where it incontrovertibly appears the word was intended to be used in that sense ; but here, there is an evident intention to vest a discretionary power somewhere, The power to wave the felony is not to be exercised at all events: or else, why make the leave of the Court a requisite? It will not do to say the Court is bound to grant leave : it would be a useless and even a,ridiculous ceremony to make' it imperative on the Attorney General to apply for. leave in every case, and on the Court tc> grant it in every case. Neither is it enough to say the Attorney General may go for a misdemeanour, ^without going through the form of an application to the Court. If the Legislature had meant that every involuntary manslaughter should be prosecuted as a misdemeanour, at all events they would have said so in terms, without having recourse to a circumvolution, which will not bear the interpretation contended for, without straining some of the words. But, there was good reason for making a distinction between different grades of guilt in involuntary manslaughter ; and to shew it a hundred cases might be put. It cannot ,be supposed to have been intended, that a persqn, who, driving Jehu-like through the streets of a town, runs over, and kills a child, should be punished only for a misdemeanour, while the man, who, stung to madness by taunting allusions to circumstances of extreme delicacy, connected with his family or friends, (from which it is the happiness of few to be-entirely exempt,) destroys life by a box on the ear, with the unarmed hand, is to,be treated as a felon. Yeti such must be the *433 case, If the intermediate ..grade of the offence were not preserved ; although, the first case put, is an instance of a diabolical crime, whilst the second is, in morals, scarcely a crime at all. '
These distinctions are of no further value in the present inquiry, than as they serve to point out the precise section of the Act, within which the case of the prisoners falls. I am decisively of opinion, they ought not, as the verdict stands, to be sentenced on the section which relates to voluntary manslaughter, but on that, which declares theu punishment of felonies formerly clergyable. The distinction between the grades of this kind of homicide has not, hitherto, being attended to ; and I admit,' there have been frequent instances of the more aggravated punishment, on conviction of the of-fence generally; but the practicé has not been uniform. In a case particularly within my own knowledge, The Commonwealth v. Graves and others, who, a few years ago, were tried at Carlisle, for the murder of Robert Grayson, President Hamilton, directed the jury, in case they should think the facts warranted it, to convict the prisoners specially voluntary manslaughter, which they did, and the verdict was so recorded; his honour, intimating that the prisoners could not receive the more aggravated punishment,. unless specially found guilty of the Worst grade of the offence ; and I am of opinion, many other cases of special conviction might be found in the records of the other judicial districts. Practice, to have effect, should at least be uniform and general; I apprehend, it should, in no event, have any, to establish a measure of punishment never sanctioned by the Legislature; particularly, where a change to the true construction, could operate only prospectively.
The particular circumstance,, which distinguishes voluntary from involuntary manslaughter, is no where accurately defined. Were it not, that an attempt at classification had been made before the passing of the Act, I should be governed by analogies drawn from other parts of the Act itself, and should fix on the presence or absence of an intention to slay, as the criterion, rejecting i-r (¡meditation and deliberation as circumstances that cannot «-rist in any kind of manslaughter, and which are therein proper to distinguish only be *434 tween different degrees of murder. .. There are a variety of caseg5 where voluntary killing may not be murder, as where it ensues, without malice, from a furious state of the mind, induced by what the law esteems reasonable provocation, Regina v. Naylor, Fost. 272. Stedman's Case, 2 Loft’s. Ev. 736 . or frona resistance toa defective authority, even though the defect be unknown at the time. Hugget's Case, Kel. 59. Regina v. Tooley, 2 L. Raym. 1296. Sir Henry Ferror’s Case, Cro. Car. 371. et vide Curles Case, Fast. 135. 4 Bl. Com. 192 ; or where the party is slain in defiling the prisoner’s bed ; and many other cases thát might be put. With us, such cases would undoubtedly be punished as voluntary manslaughter; but the Act is by no means explicit, as to what shall constitute involuntary manslaughter, which is defined as “happening in1 consequence of an unlawful Act.” But ail manslaughter must necessarily so happen, as no person can commit it negatively by abstáining to act altogether, or in any way short of doing a positive and unlawful Act: this therefore leads to nothing. But a distinction like this, such as it is, was attempted before the passing of the Act; particularly by Sir William Blackstone, 4 Com. 191, who seems to think the matter depends on whether the unlawful Act were directed against the person of the party slain. Now it is obvious, this is without any foundation in reason ; for a blow which deprives of life, may be perfectly voluntary on the part of the giver, without the death, which ensues, being a consequence either sought or intended ; and in such case, the slaying can. with no propriety be said to be voluntary. In England, where every kind of manslaughter was punished alike, the distinction was without practical consequences ; and that may account, in this instance, for the crudity of a writer so clear and satisfactory in general. But, as there actually was an existing distinction at the passing of the Act, I am far from thinking the terms employed by the Legislature were not used in reference to it; or that we ought not to adopt it as far as it goes : but this ought to have no effect, by analogy, in murder, whert, except in those cases in which the intention is excluded as an operative circumstance, the killing, to amount to murder of first degree, must be wilfuls premeditated and voluntary.
*435 Duncan J.
Crimes are divided into two-denominations* felony and misdemeanour; misdemeanours include all indictable offences which do not amount to felony. On an indictment for murder, the jury-may acquit the prisoner of murder and convict him of manslaughter; for .all manslaughters are felo- , , . , i mes at common law : voluntary continues so, under our penal code; and'from my view of the subject, the only inquiry is, does involuntary manslaughter still remain a felony, or is its nature and punishment changed ? Is it a misdemeanour punishable by fine and imprisonment, or a felony punishable by infamous infliction ? No judgment for manslaughter would iDe good without charging it as felonious. . The common law definitions of voluntary and involuntary manslaughter must be •resorted to; the crime of voluntary manslaughter not being defined by the Act. We must look to the common law; there is no other criterion by which to distinguish the two branches of manslaughter. It is true, the Act describes involuntary manslaughter as happening in consequence of an unlawful Act; but still we must look to the common law for the definition of voluntary manslaughter. If, upon a sudden quarrel, two fight, and one of them, with a stroke not likely to kill, kills the other, this is voluntary manslaughter. So if one, on a. slight provocation, strikes another, and unluckily, and against his will, kills him. But involuntary manslaughter happens in consequence of an unlawful act, without an intention to do personal injury to any one;—and no mote was mtended than a mere trespass.
The provision of the 8th section of the Act of 1794. as to indicting and trying for involuntary manslaughter, I consider imperative. The attorney general must take ope of two courses, wave the' felony‘.with the leave of the Court, and proceed for a misdemeanour, or without leav«:.of tbe Court may charge both offences in the same indictment, in which case the jury may acquit the party of the one, Pfld find him guilty of the other charge. But the Legislature never could have'intended to leave it either to the attorney general, or the Court to punish as a felony, that which they have declared to be a misdemeanour, and invest the Court with a descretion to sentence one committed of a misdemeanour to the cells for two years..
The word may, in statutes, is frequently construed as shall ¿ *436 as in the statute of William and Mary, for assigning breaches on bonds with collateral conditions, may assign, may suggest,' being for the benefit of a party is compulsory, ánd the plaintjff can proceed in no other way. So in the statute 23 H. VI. which says that the Sheriff may take bond, this is construed he an(j jje js compellable to take it, 1 Salk. 609. How much stronger is the compulsion in a case so highly criminal, and where the difference is so very great, both in the crime and in the punishment.
Involuntary manslaughter is a distinct offence; it is not felony punishable by solitary confinement and hard labour, but misdemeanour punishable by fine and imprisonment; for if it is not this offence and thus punishable, it remains punishable as a clergyable offence, and is punished with greater ignominy than voluntary manslaughter; for in addition to pillory, confinement, and hard labour in all the offences which were before clergyable, and for which there is no specific punishment by the Act, the convict is to be treated and dealt with as the Act for the penal laws directs. Among other things, that Act directs shaving of the head, coarse food and clothing in coarse habits, and invests the keeper with a power to confine any of those malefactors who shall be idle or guilty of any trespass, in close durance, feed him on bread and water, and when he proves incorrigible put an*iron yoke round his neck, and chains on his legs. Such was not the intention of the Legislature; they sank the offence from the high grade of felony to a misdemeanour; they punished it at the discretion of the Court with fine and imprisonment; discretion as to quantum of fine and duration of imprisonment. The object was to proportion'the punishment to the nature of the offence, and to draw a marked line between the branches of manslaughter.
Voluntary manslaughter .is, in the eye of reason, more criminal than involuntary. The offence is a high one, the punishment moro severe, taking from involuntary manslaughter all ignominy of punishment. The Virginia Legislature have adopted verbatim, the provision under consideration, and Judge Tucker in his notes to Blackstone, 4 Bl. 193, considers the provision as classing involuntary manslaughter in the rank of misdemeanour. ■ The precedents with which we have been furnished, shew the offence of involuntary *437 mánslaughter to have been constantly indicted as misdemeanour. I do not speak of the indorsement, but the bodies of the indictments. Those for manslaughter, charge the killing to have been felonious, while in those for the involuntary, it is laid to be unlawful.' The practice so long continued, shews at least the sense of the bar and .of the Courts. I do not say, that this construction is binding in a case so highly criminal, yet it is evideñce of the general opinion; but if it were erroneous, I would not punish this man, because other men had been unjustly or erroneously punished. But I think the practice right ab ovo, and that sentence for voluntary manslaughter follows on this conviction, for the following reasons, Jirst, That on an indictment for murder, the party may be acquitted of the murder, and convicted of the manslaughter. Second, Because if it had appeared to the Judges who tried these men, that the facts only proved an involuntary manslaughter, they should have directed an acquittal, and the verdict ought now to be set aside; but this is not pretended. Third, For by the record it appears the jury have found the-prisoners guilty of a felonious killing. Fourth, For that involuntary manslaughter is not a felony, but d misdemeanour, and that the prisoners being found guilty of a felony cannot be sentenced for a misdemeanour. In the scale of sound reáson and substantial justice, the cases widely differ. The law looks with a je.alous eye on every act which tends to bloodshed, and a disturbance of the peace ■—condemns the voluntary perpetrator of that act when attended with death, as a felon, although it punishes him not with the heaviest sentence, unless where it is perpetrated with the deliberate design to take life ; but when death ensues in consequence of. an unlawful act, not felonious, though the law considers the man far from innocent, it consigns him not'to the cells, but measures the nature and degree punishment, by the enormity of the offence, by the degree real guilt. It entrusts no man and no Court, with the tyrannical power of punishing as a felony,. that which it has declared a misdemeanour. Discretionary punishment as to its quantum in cases of misdemeanour, is wisely vested in the Courts: the degrees of guilt, and the shades and colours of the offences are so various. But it never vests in them any discretion as to its nature. This would be a tremendous power, *438 and inconsistent with all our notions of a free government. Arbitrary punishment is the essence of every absolute and despotic government, while punishment prescribed by law, is the essence of every free and well regulated government; and every offence by our laws, has its certain punishment allotted. Misdemeanour is punished by fine and imprisonment, at the discretion of the Court, exercised on a just consideration of all the circumstances of aggravation or alleviation, except for those misdemeanours in their nature infamous, and for which infamous puuishment v/as inflicted, before the act to amend the penal laws; for there the sentence is confinement at hard labour, not exceeding two years ; the nature of the punishment not left to the Court’s discretion, though the quantum is.
For the reasons given by the Chief Justice, to which I can add nothing, the objection'to the verdict, grounded on its uncertainty, fails altogether.
On the 29th December, 1821, Gable produced the Governor’s pardon, and was discharged. .
Same day, judgment that Smith undergo an imprisonment for two years at hard labour, &c., in the penitentiary of Philadelphia, and give security for good behaviour for one year from the expiration of said two years, himself in 500 dollars, and two good sureties in 250 each, and pay the costs of prosecution, and stand committed till this judgment is complied with.