# CASES

## IN THE

# SUPREME COURT OF ALABAMA,

### NOVEMBER TERM, 1890.

## Tanner *v.* The State.

*Indictment for Assault with Intent to Murder.*

1. *Objections to grand jury.*—Where the number of grand jurors is by special statute limited to fifteen, and that number having been drawn and summoned, thirteen only appeared, and two others were added in statutory form; but the record recites that the court then proceeded to organize the grand jury with said fifteen persons, appointing one of the original number as foreman, who was thereupon duly sworn, and adds the names of only thirteen others, "who were duly impanelled, sworn and charged according to law as grand jurors for the present term of the court;" *held*, that the irregularity, if not to be regarded as a clerical misprision, was cured by statutory provision. (Code, § 4445).

2. *Joinder of counts in indictment; election.*—An indictment against several persons for an assault with intent to murder, containing two counts, is not demurrable for misjoinder, because one count charges that the assault was committed on A, and the other that it was committed on B; but, if the evidence shows that the two assaults were entirely distinct and disconnected, an election by the prosecution should be compelled, if requested.

3. *Conspirators; liability of each for acts of others.*—When, by prearrangement, or on the spur of the moment, two or more persons enter upon a common enterprise or adventure, which contemplates the commission of a criminal offense, and their purpose is carried out, each is equally guilty of the offense committed, though he may have done no overt act in its commission; and the criminal accountability extends also, beyond the enterprise or adventure itself, to its proximate, natural and logical consequences, but not to any special act beyond the common purpose, growing out of the individual malice of the perpetrator, unless the others had knowledge of that malice.

4. *Same; proof of conspiracy, or of malice and knowledge.*—It is not necessary that the act of conspiracy, or community of purpose, should be proved by positive testimony, but it is for the jury to determine from the conduct of the parties, and all the evidence in the case, whether it exists, and the extent of it; and the same principle applies to proof of special malice on the part of the perpetrator, and knowledge thereof on the part of the others.

5. *Same; charge as to malice.*—Under an indictment against T., S. and another, for an assault with an intent to murder two other per-

1

[Tanner v. The State.]

sons, T. alone being on trial, and the evidence showing that, during the difficulty, pistols were fired, and stones thrown by the defendants; a charge requested, instructing the jury that "malice on the part of S.. not indulged by defendant (T.), will not authorize a conviction of the defendant of the offense charged in the indictment," is properly refused. (McClellan, J., dissenting.)

6. *Requisites of charges.*—The court is not bound to give every charge asked which can be shown by technical reasoning to be abstractly correct; it must be guaged and interpreted in the light of the testimony, and if it is not adapted to the testimony, or ignores any qualifying tendencies, or has a tendency to mislead the jury, it may be refused, although it may be faultless in law in a proper case.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. JOHN B. TALLY.

The appellant, Bill Tanner, was jointly indicted with William and James Smith, for an assault with intent to murder Larkin Reynolds and Bill Johnson. The indictment contained two counts. In the first count, the assault was alleged to have been directed against said Reynolds; and in the second count, the assault was said to have been directed against said Johnson. When the case was called for trial, the other two defendants not having been arrested at that time, the State asked for a severance as to the defendant Tanner, which the court granted; and the said Tanner was tried alone. The defendant moved to quash the indictment, on the ground of misjoinder, and that each count of the indictment charged separate and distinct offenses. This motion was overruled by the court; and the defendant demurred to the indictment on the same grounds. The court overruled the demurrer; whereupon the defendant pleaded in abatement the same grounds which were stated in the motion to quash.

The evidence, as shown by the bill of exceptions, is to the effect, that in August, 1890, upon a dispute arising between one of the Smiths and the said Reynolds and Johnson, the defendant Tanner and both of the said Smiths got into an altercation with said Reynolds and Johnson; that during the difficulty pistol shots were heard, and Reynolds ran up some steps leading to a room over a restaurant near by, and Johnson ran in another direction down the street; that as they ran either Tanner, or one or both of the Smiths shot at them again, and threw rocks at them—Reynolds being shot once, and Johnson being hit on the back of the head with a rock. On motion of the defendant, the solicitor elected to proceed on the second count of the indictment, which alleged that the assault was made on Johnson. There was testimony that Tanner threw a rock at Johnson; but there was no positive evidence as to who fired the pistol at him, although there was evidence that Tanner had in his possession a pistol during the

[Tanner v. The State.]

altercation. The testimony for the defendant tended to show that he neither threw rocks, nor fired a pistol.

On all the evidence, the defendant requested the court to give the following written charges, and duly excepted to the refusal to give each of them : (1.) "Before the defendant can be convicted of any offense in this case, the jury must be satisfied beyond a reasonable doubt that both he and the said Jim Smith fired their pistols at the said Bill Johnson, and that the said Bill Johnson was within range of said pistol shots at the time they were fired." (2.) "If Jim Smith alone fired his pistol, either once or twice, at Bill Johnson, and no one else fired a pistol at him, then this defendant can not be convicted of any offense under the indictment in this case." (3.) "If the jury have a reasonable doubt as to whether the defendant fired his pistol at or towards the said Bill Johnson, they must find the defendant not guilty." (4.) "If there is probable cause for believing that the said Bill Johnson was assaulted with but one pistol, the jury can not find the defendant guilty." (5.) "Unless the jury is satisfied beyond a reasonable doubt that the defendant Tanner, with malice aforethought, did assault the said Bill Jonnson with a pistol, they must find the defendant not guilty." (6.) "If the jury believe from the evidence that the only assault made by the defendant Tanner upon Bill Johnson was made with a rock, they can not find the defendant guilty." (7.) "Unless the jury are satisfied beyond a reasonable doubt that Bill Johnson was assaulted with pistols, and not with one pistol alone, they can not find the defendant guilty." (8.) "The defendant can not be convicted of the offense charged in the indictment unless the jury are satisfied beyond a reasonable doubt that the offense was committed with malice, and with more than one pistol." (9.) "If the jury believe the evidence in this case, they must find the defendant not guilty." The 10th charge is copied in the opinion.

There was no objection to the grand jury in the court below, and the opinion states the facts on which an objection is urged in this court.

BENJ. F. POPE, for appellant, cited Code, § 4338; *Smith v. State*, 88 Ala. 73; *Phillips v. State*, 68 Ala. 469; *Cross v. State*, 63 Ala. 126; *Berry v. State, Ib.* 126; *Johnson v. State*, 44 Ala. 414; *Elliott v. State*, 26 Ala. 78.

WM. L. MARTIN, Attorney-General, for the State.—The omission of the name of one of the grand jurors, who were "duly impanelled, sworn and charged," from the record recital of the

4 SUPREME COURT [Nov. Term,

[Tanner v. The State.]

.formation of the grand jury, will not invalidate the indictment; (1) for the repetition of the names of the grand jurors was an act of supererogation on the part of the clerk of the court. *Foote v. Lawrence*, 1 Stewart, 483. (2.) The plea of not guilty was an admission of the genuineness of the indictment. *Ex parte Winston*, 51 Ala. 419; *Mose v. State*, 35 Ala. 421; *Russell v. State*, 33 Ala. 366; *State v. Clarkson*, 3 Ala. 378; 1 Brick. Dig. p. 467, § 702; *State v. Weaver*, 104 N. C. 758. (3.) The objection comes too late, when made for the first time in this court.—*Dotson v. State*, 88 Ala. 208; *Harrington v. State*, 83 Ala. 9; *Roe v. State*, 82 Ala. 68; *Floyd v. State*, 30 Ala. 511. (4.) The irregularity here complained of can not be taken advantage of.—Code of 1886, § 4445.

There was no misjoinder in the indictment.—*Butler v. State*, 91 Ala. 87; *Adams v. State*, 55 Ala. 143; *Wooster v. State, Ib.* 217; *Mayo v. State*, 30 Ala. 32.

The charges requested by the defendant were rightly refused. *Lundy v. State*, 91 Ala. 100; *Walls v. State*, 90 Ala. 618; *Martin v. State*, 89 Ala. 115; *Cleveland v. State*, 86 Ala. 1; *Hanna v. People*, 86 Ill. 243; *Brennen v. People*, 115 Ill. 511; 1 Whar. Cr. Law, § 220.

STONE, C. J.—The number of grand jurors in Cherokee county is limited to fifteen. No greater number can be drawn for any one term.—Acts of 1878–9, p. 204. · Every one of the said number drawn to serve at the December term, 1890, was summoned by the sheriff. When, at the opening of the court for said county, the *venire* was called, all appeared save two. Their places were supplied in statutory form, and the record shows that the court determined to have a grand jury of fifteen persons, namely : the remaining thirteen embraced in the *venire*, and two additional ones, L. D. Griffiths and Henry McElrath. The court then organized the grand jury, composed of thirteen of the original *venire*, and the two additional ones summoned and selected to complete the jury of fifteen persons. The record then affirms that B. F. Wood, one of the original fifteen, was appointed and sworn as foreman. The record then proceeds to give the names of the grand jurors who "were duly impanelled, sworn and charged according to law, as grand jurors for the present term of this court." In this list of names so given are only thirteen, in addition to Wood, the appointed foreman. It will thus be seen that fifteen persons were ascertained and adjudged to possess the requisite qualifications of grand jurors, and, from all appearances, were accepted and assigned to that service. And while the record sets forth fourteen names as being "duly impanelled,

sworn and charged according to law," it is silent on this subject as to the remaining juror, Thomas F. Stewart. This, under ordinary interpretation of language, raises a strong implication that, without being sworn as such, the said Stewart served as a grand juror when the indictment in this case was preferred.

No question was raised in the Circuit Court on this apparent irregularity, and it is raised here for the first time. It is at least possible that it was, at most, a clerical misprision; and that if the attention of the court had been called to it, at any time before adjournment of the term at which the indictment was found, the record would have been corrected. Our statute, however, cures the irregularity. Its language is: "No objection can be taken to an indictment, . . on the ground that any member of the grand jury was not legally qualified, or that the grand jurors were not legally drawn or summoned, or on any other ground going to the formation of the grand jury, except that the jurors were not drawn in the presence of the officers designated by law."—Code of 1886, § 4445. The objection in this case goes "to the formation of the grand jury," and falls directly within the healing influence of the statute. We have heretofore regarded it as healing more palpable irregularities than that complained of in this case. In *Roe v. State*, 82 Ala. 68, the record shows that all the grand jurors were sworn except the foreman, and was silent as to him. We held that this was no ground of reversal.—*Floyd v. State*, 30 Ala. 511; *Billingslea v State*, 68 Ala. 486; *Harrington v. State*, 83 Ala. 9; *Murphy v. State*, 86 Ala. 45; *Dotson v. State*, 88 Ala. 208.

Nor was there anything in the demurrer for misjoinder of counts. The two offenses charged are not alone of the same family of crimes. They are identical in all that constitutes their criminality, and in the manner and measure of their punishment.—*State v. Coleman*, 5 Porter, 32; *Johnson v. State*, 29 Ala. 62; *Oliver v. State*, 37 Ala. 134; *Cawley v. State*, *Ib*. 152; *Snow v. State*, 54 Ala. 138; *Adams v. State*, 55 Ala. 143. If, when the case or cases were developed in the testimony, it became apparent that there were two distinct, disconnected offenses, it then became the duty of the presiding judge, if moved thereto, to require the prosecution to elect on which offense a conviction would be claimed.—3 Brick. Digest, p. 268, §§ 242–3. That course was pursued in this case.

The testimony for the prosecution tended to show that either Tanner or one of the Smiths fired a pistol at Johnson, and that one of them threw a rock at him, striking him about the back of the head. The testimony was somewhat variant as to

who did these acts, whether the one or the other.  The testimony further tended to show a community of purpose, or concert of action, between Tanner and Jim and Bill Smith, at the time these alleged acts of violence were committed.  It was admitted that Treadway, an absent witness for defendant, would testify, if present, that he, witness, was present, and saw the entire difficulty; that Tanner fired no pistol, and took no part in either of the fights; and that he saw him, Tanner, take Jim Smith, one of the three alleged accomplices, away, and in the presence of Treadway, asked and begged him to have no difficulty.  If this be true, Tanner was acting as a peace-maker.  It is not for us to attempt to reconcile the conflicting testimony, or to determine the facts of the case.  That was a question for the jury.

The general doctrine appertaining to conspirators, or persons acting with a common, criminal purpose, may be thus stated: When two or more enter upon a common enterprise or adventure, whether by pre-arrangement, or entered into on the emergency, and that enterprise contemplates the commission of a criminal offense, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not.  This rests on the principle, that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the active perpetrator in the commission of the offense, is a guilty participant, and, in the eye of the law, is equally guilty with the one who does the act.  And this criminal accountability extends, not alone to the enterprise, adventure, or encounter in which the conspirators are engaged, but it takes in the proximate, natural, and logical consequences of such adventure.  This, because all men are presumed to intend the proximate, natural, and logical consequences of acts intentionally done; and one who is present, encouraging or ready to aid another in such conditions, must be presumed to be cognizant of that other's intention, to the extent above expressed.  If such conspiracy, or community of purpose, embrace the contingency that a deadly encounter may ensue, with the common intention, express or implied, to encourage, aid, or assist, even to the taking of life, should the exigencies of the encounter lead up to that result; then, as a general rule, the act of one becomes the act of all, and the one who encourages, or stands ready to assist, is alike guilty with the one who perpetrates the violence.  And such community of purpose, or conspiracy, need not be proved by positive testimony.  It rarely is proved.  The jury are to determine whether it exists, and the extent of it, from the conduct of the parties, and all the testimony in the cause.— *Wil-*

*liams v. State*, 81 Ala. 4; *Martin v. State*, 89 Ala. 115; *Gibson v. State, Ib.* 121.

We have said the accomplice, equally with the actor, is responsible for the acts done, if they are the proximate, natural, and logical result of the adventure upon which they enter with common purpose. This needs some explanation. The accomplice, as we have seen, is criminally responsible for acts which are the direct, proximate, natural result of the conpiracy formed. He is not responsible for any special act, not within the scope of the common purpose, but which grows out of the individual malice of the perpetrator.—1 Wharton Crim. Law, § 397.

A further explanation : Many public offenses consist of an act done, coupled with a constituent element which extends beyond the act, and takes in something outside of it. Knowledge and intent, when constituents of crime, are of this class. When knowledge is one of the required elements, then the accomplice must have knowledge, or he is not guilty. Buying or receiving stolen goods, knowing them to be stolen, furnishes an illustration of this principle. So, when intent is one of the required constituent elements, the co-conspirator, or accomplice, to authorize his conviction, must himself have entertained the intent, or must have known that the actor, whom he was encouraging, aiding, or abetting, entertained it. Without this individual intent, or personal knowledge, it can not be affirmed that he aided or abetted in the crime charged. This need not, however, be positively proved. If it fall within the scope of the common purpose, formed and entered into, it is enough.—1 Whar. Cr. Law, § 214; *People v. Leith*, 52 Cal. 251; *Savage v. State*, 18 Fla. 909; 1 Amer. & Eng. Encyc. of Law, 64.

Applying these principles to this case : If Tanner did not fire the pistol at Johnson, then he was not guilty as charged, unless, first, he entertained individual malice or intent, and was present encouraging or aiding, or ready to encourage or aid in carrying it out; or, second, unless he had knowledge that the perpetrator entertained such malice or intent, and was present as an accomplice to encourage, aid, or assist in its execution.

Whether defendant entertained this personal intent, or whether he knew Smith, or whoever fired the pistol, entertained it, and fired at Johnson with intent to kill and murder him, were questions for the jury. It is not required that such intent or knowledge shall positively be proven. Like most other inquiries of fact, it may be inferred from circumstances, if sufficiently convincing. If, from the conduct of the parties,

as shown in the testimony, and the other testimony in the cause, the jury were satisfied beyond a reasonable doubt that Tanner entertained the intent, or knew that the one who fired the pistol entertained the intent, thereby to kill and murder Johnson, and with such intent or knowledge he was present, encouraging, aiding, or abetting him, or ready to do so, then he was an accomplice, and alike guilty with him who fired the pistol. Of course, in such conditions, his guilt would depend on the further inquiry, whether the firing of the pistol was done under such circumstances as to render the perpetrator guilty of an assault with the intent to murder.

Under the principles declared above, the Circuit Court did not err in refusing to give the first nine charges asked by the defendant. The 10th charge asked by the defendant is in the following language: "Malice upon the part of Jim Smith, and not indulged by the defendant, will not authorize a conviction of the defendant Tanner of the offense charged in the indictment." Our first impression was, that this charge ought to have been given, for two reasons: *First*, there can be no conviction of an assault with an intent to commit murder, without a specific intent to take the life of the person assaulted. *Walls v. State*, 90 Ala. 678. *Second*, unless defendant was personally influenced by malice, he could not have been moved by the actual intent to take the life of Johnson, or to have it taken, which is generally a necessary ingredient in this statutory crime. Further examination has changed our mind. The defendant was rightly convicted, if he himself entertained what the law calls malice—an intent to take the life of another, without legal excuse for the act, and without mitigating circumstances which would reduce the crime attempted below the grade of murder; or, if the one who fired the pistol entertained such malice and intent, and Tanner, being chargeable with knowledge of such malice and intent, encouraged, aided, or assisted him in the assault. In other words, if Smith, with malice aforethought, fired a pistol at Johnson with intent to kill and murder him, and defendant was present, and, with knowledge of his intent, made himself his accomplice, as we have defined that term, this is the equivalent of legal malice, and justified his conviction.

It is not every charge which can be shown by technical reasoning to be abstractly correct, that the court is bound, under all circumstances, to give. Charges must be guaged and interpreted in the light of the testimony; and if a charge asked, no matter how faultless in law in a proper case, nevertheless be inadapted to the testimony, ignore any of its qualifying tendencies, or has a tendency to mislead the jury, it should be

[Darby v. The State.]

refused.—*S. & N. R. R. Co. v. Wood*, 71 Ala. 215; *Alexander v. Alexander, Ib.* 295; 3 Brick. Dig. p. 1123, §§ 85, 110. Charge 10 entirely ignores the question of Smith's malice and intent, Tanner's knowledge of it, and any and all encouragement and assistance he may have rendered him, or been ready to render him in the encounter; questions which the testimony for the prosecution clearly raised. For that reason, if for no other, it was rightly refused.

Affirmed.

McClellan, J. dissenting as to the correctness of the 10th charge asked and refused.