# Jolly *v.* The State.

### *Indictment for Assault with Intent to Murder.*

1. *Conspirators; liability of each for acts of others.*—If two or more persons combine or conspire together to make an assault or attack on another, and all of them are present when the assault is made, encouraging, aiding or abetting, or ready to do so, each is criminally responsible for the act of the one who makes the assault, or does any other act which, though not expressly agreed on in advance, was a probable or natural consequence of the execution of their common purpose.

2. *Assault with intent to murder; proof of intent, and charges as to.* To justify a conviction of an assault with intent to murder (Code, § 3751), an intent to take life must be proved to the satisfaction of the jury; but, like the malicious intent in murder, it may be inferred from the use of a deadly weapon, the character of the assault, and other attendant circumstances; and the court may so instruct the jury.

3. *Same.*—On a prosecution for an assault with intent to murder, there being evidence tending to establish a conspiracy between the defendant and others to make the assault, if the jury believe that the defendant himself made the assault, or struck the blow, with the intent to kill, proof of the conspiracy is unnecessary and immaterial; if one of the others was the assailant, and the conspiracy is proved, the defendant may be convicted if the jury believe he had knowledge of the assailant's intent to kill, although he did not himself entertain such intent; and the existence of a doubt as to who was the assailant, or struck the blow, does not authorize an acquittal, if the conspiracy is fully proved.

4. *Refusal of new trial.*—The overruling of a motion for a new trial in a criminal case is not revisable, though an appeal is given by statute in a civil case.

FROM the City Court of Anniston.

Tried before the Hon. B. F. CASSADY.

The defendant in this case, James Jolly, was indicted for an assault on James Powell, with the intent to murder him; was convicted, and was sentenced by the court to imprisonment in the penitentiary for the term of three years. The evidence on the trial showed that Powell, who was the superintendent of the weaving room in the Anniston Cotton Factory, had a difficulty with William Powell, the defendant's father, about noon on the 5th November, 1890; and that the assault on which the prosecution was founded, occurred just after the factory was closed on the evening of that day. Powell testified that, on reaching the street, after he left the yard, he was met by William Jolly, who was accompanied by his daughter,

and who commenced cursing him; that the daughter got between them, and begged her father to go home; "that while they were so situated, some one from the rear struck him in the breast; that he immediately turned, and saw Joe Jolly some five or six feet away, backing off, and threw at him a brick which he had in his hand; that Joe Jolly was the only person he saw near or behind him at the time, and did not see James Jolly about there at the time of the difficulty." Another witness for the prosecution testified that, just after Powell had been carried away, "he heard some one talking loud up the street, who said, 'I cut Powell,' and that it was James Jolly who was doing the talking;" and other evidence for the prosecution tended to snow that there was an agreement between said William Jolly and his two sons, Joe and James, to attack Powell as soon as he came out of the factory that evening, and that they were seen several times during the afternoon in the neighborhood of the place. The physician who was called to see Powell testified, that the cut he received was made with a knife or other sharp instrument, "and was as close to the heart as it could be and miss it."

The court charged the jury, orally, "that if they believed beyond a reasonable doubt that the defendant was present at the time of the difficulty, and was aiding and abetting the same, he would be as guilty as the one who struck the blow, although they might believe that the blow was struck by some one else engaged in the difficulty; that if he was concerned in the matter by previous agreement with the parties engaged in the difficulty to have the same, and the difficulty was had in pursuance thereof, then he would be as guilty as the party who struck the blow, although he was not present when the blow was struck; that the law makes no distinction between accessories before the fact and principals—they are all regarded under the law as alike guilty, and are to be indicted, tried, and punished as principals."

To this charge the defendant excepted, and he also excepted to the following charges, which were given at the instance of the State: (1.) "An intent to take life is an essential element of the statutory felony, assault with intent to murder, and must be proved to the satisfaction of the jury; but, like the malicious intent in murder, it may be inferred by them, from the character of the assault, the use of a deadly weapon, and the other attendant circumstances." (2.) "All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, must be tried and punished as principals." (3.) "If several persons conspire to do an unlawful act, as to com-

mit an assault with intent to murder, all the members of such illegal combination are responsible for the acts of each, done in prosecution of their common purpose ; and in this case, if the jury believe from the evidence that. the defendant was acting in concert with his father and brother, and that it was their common purpose and design to assault Powell, with intent to murder him, and that one of them, in pursuance of this common purpose, did assault him with a knife, with intent to murder him, in this county, and within the jurisdiction of this court, on November 5th, 1890, then the defendant would be responsible for the act of his accomplice. whether his hand held the knife, or whether the cutting was done by his brother, if the evidence shows that it was done by either."

The defendant requested the following charges in writing, and duly excepted to their refusal.

(1.) "The defendant is charged with an assault with intent to murder, and not for conspiracy to commit the same; and before any person can be convicted for being a conspirator to commit an assault with intent to murder, he must be so charged under a separate section of the Code, and when alone indicted for the offense of an assault with intent to murder, he can not be convicted as a conspirator."

(2.) "If all the testimony shows that it is as probable Joe Jolly cut Powell as that Jim Jolly cut him, and the testimony is such that there is a doubt in the minds of the jury as to who cut Powell, then they should find for the defendant."

(3.) "Unless the jury find from all the testimony that Jim Jolly, the defendant, assaulted Powell with malice aforethought, with intent to murder him, he can not be found guilty as charged in the indictment, as an accomplice, unless the jury find from the testimony, beyond a reasonable doubt, that there had been previously a conspiracy between the defendant and others, or they can not find the defendant guilty."

(4.) "Unless the jury find from all the testimony that Jim Jolly did assault James Powell with malice aforethought, with intent to murder, they can not find him guilty as charged."

(5.) "If, from all the testimony, the jury have a reasonable doubt as to whether Joe Jolly, Jim Jolly or William Jolly cut said Powell, then they should find the defendant not guilty."

(6.) "If the jury have a reasonable doubt as to whether Powell was cut by the defendant, or by Joe or William Jolly, and this doubt arose from all the testimony, then they should acquit the defendant."

(7.) "In this case, the law requires the State to make out by testimony from the stand, by witnesses, every fact neces-

sary to prove the guilt of the defendant, beyond any and all reasonable doubt; and unless the State has made out by proof the facts charged, it is not necessary for the defendant to offer any testimony; and the jury should, under such a state of facts, find the defendant not guilty."

(8.) "Before the jury can find the defendant guilty as charged in the indictment, [they] must find that he was an accomplice, and the proof must show that there had been a previous conspiracy between them to commit the offense charged in the indictment."

(9.) "Unless the jury find from all the testimony, to a reasonable certainty, that James Jolly did the cutting of Powell, but they find from all the testimony that there is a doubt in their minds, created by the testimony, that they can not say beyond all doubt that he is guilty, then they should find him not guilty."

(10.) "It don't matter what amount of difficulty had occurred between Powell and Joe and William Jolly, and how bad a state of feeling existed between them, the jury can not find the defendant guilty, unless they find from all the evidence that he cut Powell, and so find beyond all reasonable doubt that he cut him with malice aforethought, and with intent to murder."

(11.) "In order to convict the defendant, it is necessary for the State to prove, beyond all reasonable doubt, each allegation in the indictment; and unless the State proves that the defendant had malice against Powell, and that this malice was in him before the difficulty or cutting, then he can not be found guilty as charged in the indictment."

(12.) "Before the jury are authorized to find the defendant guilty, they must find from all the testimony, beyond a reasonable doubt, that he had malice in his heart against Powell, and that the malice existed before Powell was cut."

(13.) "Unless the jury find from all the testimony, beyond a reasonable doubt, that Jim Jolly had malice in his heart against Powell prior to the cutting, and that he did the cutting with malice aforethought, they can not find him guilty as charged in the indictment."

(14.) "If the jury find such a conflict in the testimony as to leave a doubt in their minds as to who cut Powell, then they should find the defendant not guilty."

(15.) "If the jury, in considering all the testimony in the case, find that Joe Jolly and William Jolly were present, and had as good an opportunity to have done the cutting as Jim Jolly, and are not fully satisfied, beyond a reasonable doubt, that Jim Jolly did cut Powell, then they should find the defendant not guilty."

[Jolly v. The State.]

(16.) "Before the jury can find the defendant guilty, they must find it from all the testimony that has been delivered to them by the witnesses from the stand; and unless the jury, after weighing all the evidence, are in doubt, and a reaonsable doubt, as to who did the cutting, then they should find the defendant not guilty."

(18.) "In considering the testimony in this case, the jury must try to reconcile all the testimony, if there is a conflict; and if, after considering the testimony, there should appear to the jury such a conflict in the testimony as to leave a reasonable doubt as to who did the cutting, then they should find the defendant not guilty; and the jury, in making up their verdict, should not be governed by matters and things stated in the argument of counsel, unless the testimony supports the argument."

There seems to have been a motion for a new trial, which was overruled; but this does not appear from the record, either in the judgment-entry or the bill of exceptions, and is only shown by a separate paper, verified by the affidavit of the defendant's attorney, which states that the presiding judge refused to incorporate it in the bill of exceptions.

J. H. CALDWELL, and J. H. SAVAGE, for appellant.

WM. L. MARTIN, Attorney-General for the State, cited *Martin v. State*, 89 Ala. 115; *Gibson v. State*, 89 Ala. 121; *Williams v. State*, 81 Ala. 1; *Amos v. State*, 83 Ala. 1; *Jordan v. State*, 79 Ala. 9; *Smith v. State*, 52 Ala. 407; *Tanner v. State*, 92 Ala. 1; *Walls v. State*, 90 Ala. 618; *Ming v. State*, 73 Ala. 1; Code, § 3704.

WALKER, J.—There was evidence tending to show that the defendant conspired with his father and brother to attack James Powell, and that there was a concert of action between the three when the assault was made, though the evidence was conflicting as to whether the wound received by Powell was inflicted by the defendant or by his brother, Joe Jolly. Even if Joe Jolly was the active perpetrator in the commission of the offense, the defendant is in the eye of the law equally guilty, if he was present, encouraging, aiding, abetting or assisting, or was ready to aid, abet or assist in the execution of the unlawful design. If the three combined together to attack Powell, each of them would be criminally responsible for any act of the other which was a probable or natural consequence of the execution of their common purpose, though the particular act done was not expressly agreed to or con-

templated in advance.— *Tanner v. State*, 92 Ala. 1; *Gibson v. State*, 89 Ala. 121; *Williams v. The State*, 81 Ala. 1; *Martin v. The State*, 89 Ala. 115.

. "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must . . be indicted, tried and punished as principals, as in the case of misdemeanors." Code of 1886, § 3704. The portion of the oral charge of the court to which an exception was reserved, and charges 2 and 3 given at the instance of the State, were correct, under the rules above stated.

Charge 1, given at the instance of the State, is fully supported by the decision in the case of *Walls v. The State*, 90 Ala. 618.

It was contended for the defendant, as shown by a number of charges requested, that on an indictment charging him with an assault with intent to murder, he could not be convicted on proof that he was a conspirator, and aided or abetted in the commission of the offense, but that it must be shown that he committed the assault in person. That this contention was not well founded is shown by the above statement of the law on the subject. Charges 1, 4, 9, 10, 13 and 15 involved the erroneous proposition just stated, and were properly refused.

If the defendant was concerned in the commission of the felony, or aided or abetted his father and brother therein, either of them could be convicted, though the jury could not determine from the evidence which of the three inflicted the wound, if they were satisfied from the evidence that it was inflicted by one of the conspirators, in the execution of the common design. Charges 2, 5, 6, 14, 16 and 17 requested by the defendant were incorrect, in predicating a right to an acquittal upon the existence of a doubt as to who did the cutting, without regard to the absence of doubt in the evidence that the cutting was done by one of the three persons who were acting in concert with a common purpose to attack Powell.

The defendant could be charged as a principal, if the conspiracy to attack Powell was formed at the time of the difficulty, and the cutting was done in the execution of a plan to which the defendant then became a party. The conspiracy

need not have been entered into previously.— *Tanner v. The State*, .92 Ala. 1. This consideration discloses a fault in charges 3 and 11 requested by the defendant.

If Joe Jolly was the assailant, and the defendant knew that the assault was made with intent to murder, and was present as an accomplice to encourage, aid or assist in its execution, it was not necessary to show that the defendant himself entertained the intent or malice against Powell.— *Tanner v. The State*, 92 Ala. 1. For this reason, charge 12 was properly refused.

Charge 7 was calculated to convey the impression that it was necessary to prove that the defendant committed the assault in person. In view of the evidence tending to show a conspiracy, it had a tendency to mislead the jury.

Charge 8 ignores the evidence which tended to show that the defendant did commit the assault in person. If that tendency of the evidence was believed, it was unnecessary to prove the conspiracy.

The proceeding on the motion for a new trial was not properly made a part of the record. Besides, the action of the trial court on such an application is not revisable here. *Walker v. The State*, 91 Ala. 76. The act of February 16, 1891 (Acts of Alabama, 1890–91, p. 779), allowing appeals to this court from decisions granting or refusing to grant motions for new trials, applies only to civil cases at law.

No error is discovered in the record.

Affirmed.

