# Ferguson *v*. The State.

134  63
s141  26

*Indictment for Murder.*

1. *Trial and its incidents: arraignment of defendant and setting day for trial.*—Where the defendant is indicted as Buck Ferguson, *alias* Buck Fergerson, and his appearance bond bears the signature of "W. B. Ferguson," and in the order setting the day for the trial, the case is styled as "The State against W. B. Ferguson," and said order contains a recital that "the defendant W. B. Ferguson, *alias* Buck Ferguson," was then present in open court, sufficiently shows that the defendant named in the indictment was in court when his case was set for trial.

2. *Accessories; how guilt of the accused can be established.*—The guilt of one accused of a felony may be established by proof that he contributed to the criminal result by words or acts intended and calculated to incite or encourage its accomplishment, whether he was present at its commission or not; and it is not essential to the incrimination of one so participating in the criminal act that it be done in respect of time, place or mode, according to any preconceived or instigated plan.

3. *Conspiracy; can be proved by circumstantial evidence.*—A conspiracy may be proved by evidence wholly circumstantial and without proof of express agreement between the conspirators.

4. *Conspiracy; evidence of facts happening after the accomplishment of the agreement inadmissible.*—On a trial under an indictment for murder, where there is evidence tending to show that the defendant was guilty as a conspirator, testimony relating to facts which transpired subsequent to the homicide is not admissible in evidence, unless such facts may, under all the circumstances, afford ground for inference that such conspiracy has existed.

[Ferguson v. The State.]

5. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where there is evidence tending to show that the defendant conspired with his son to kill the deceased, and that the fatal shot was fired by the son, and that after the killing the son was a fugitive, testimony that after the killing and while the son was in hiding the defendant associated with him clandestinely and tried to accomplish the son's concealment or escape, is inadmissible in evidence.

6. *Same; same.*—In a criminal case, a defendant is not entitled to exculpate himself by making proof of his own acts and declarations when not a part of the *res gestae* or of some transaction or conversation partially developed by the State; and in a trial under an indictment for murder, it is not competent for the defendant to prove that shortly before the killing he requested some one to try to get the person killed "to drop the trouble between them," and that on the night after the killing he visited the home of the mother of the deceased.

7. *Evidence; opinion of witnesses inadmissible.*—In the trial of a criminal case, questions calling for the expression of the opinion or conclusions of a witness are objectionable, and, therefore, properly disallowed by the court.

8. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, the fact as to whether the father of the deceased was sober on the occasion of the quarrel between him and the defendant some days before the shooting or whether immediately after the shooting one of the deceased's brothers came with a gun from towards defendant's store, is wholly irrelevant to any issue involved in the case and is inadmissible.

9. *Homicide; charge as to conspiracy.*—On a trial under an indictment for murder, where there is evidence tending to show that the defendant, though he did not fire the fatal shot, conspired with his son for the killing of the deceased, charges requested by the defendant which assume that proof of an agreement or understanding or design to kill the deceased, was necessary to connect the defendant with the crime as a conspirator, are erroneous and properly refused.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. JOHN PELHAM.

The appellant in this case, Buck Ferguson, was indicted and tried for the murder of Will Andrews, was

convicted of manslaughter in the first degree and sentenced to two years in the penitentiary. The facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that before they can find the defendant guilty, they must find from the evidence and that beyond all reasonable doubt, that the life of Will Andrews was taken unlawfully in pursuance of a formed design between the defendant and John Ferguson, and if the evidence fails to convince your minds to that degree of satisfaction, then you must acquit the defendant." (2.) "The jury must find from the evidence, and that beyond all reasonable doubt, that there was an agreement or understanding to kill Will Andrews unlawfully before they can find the defendant guilty." (3.) "The court charges the jury that they can not convict the defendant unless all the evidence shows beyond all reasonable doubt that the defendant either conspired with John Ferguson to unlawfully take the life of Will Andrews, or that he was aiding or abetting John Ferguson at the time Will Andrews was killed, and they can not consider the question of the killing unless they in such way connect the defendant with the crime, and the degree of guilt, as to John, can not be considered against defendant." (4.) "The court charges the jury that before the defendant can be convicted the State must establish from all the evidence beyond all reasonable doubt, 1st, that there was an agreement between the defendant and John Ferguson to unlawfully take the life of Will Andrews; 2d, that the life of Will Andrews was taken unlawfully in pursuance of such agreement, and failing in either you must acquit the defendant." (5.) "The court charges the jury that they must find from all the evidence and that beyond all reasonable doubt that the defendant conspired with John Ferguson to take the life of Will Andrews unlawfully, and they must further find that Will

Andrews was killed by John Ferguson unlawfully in pursuance of such agreement or understanding, and failing to so find, your verdict must be not guilty."

JAMES A. EMBRY and SMITH & HERRING, for appellant.—The appellant being indicted and tried for murder, and the record failing to affirmatively show that a formal arraignment on, and plea to the indictment were made before the drawing of the special venire was error for which this case should be reversed.—*Spicer v. State,* 69 Ala. 159; *Hughes v. State,* 1 Ala. 655; *Heard v. State,* 116 Ala. 440; *Frazier v. State,* 116 Ala. 442; *Hames v. State,* 113 Ala. 674; *Washington v. State,* 81 Ala. 35; *Sylvester v. State,* 71 Ala. 17; *Spicer v. State,* 69 Ala. 159.

The evidence was not sufficient to show that there was a conspiracy between the defendant and his son, John Ferguson, who is shown to have fired the fatal shot. *Turner v. State,* 97 Ala. 57; *Tanner v. State,* 92 Ala. 1; *McAnally v. State,* 74 Ala. 9; *People v. State,* 13 Am. Rep. 176 and notes.

The court erred in its rulings upon the evidence. *Reed v. State,* 68 Ala. 492; *Birdsong v. State,* 47 Ala. 68; *Dephue v. State,* 44 Ala. 32; *Thompson v. State,* 20 Ala. 54; *Curtis v. State,* 118 Ala. 125; *Mayberry v. State,* 107 Ala. 64; *Whittaker v. State,* 106 Ala. 30.

There being absolutely no testimony in the case showing or tending to show that the appellant in any way conspired with John Ferguson to kill Will Andrews or in any way counseled, encouraged or aided him in the commission of the act, the court erred in refusing to sustain the motion of the appellant to exclude all the testimony offered by the State from the jury, and the appellant's motion to exclude such testimony from the jury should have been granted.—*Tally v. State,* 102 Ala. 25; *Turner v. State,* 97 Ala. 57; *Raiford v. State,* 59 Ala. 106; *McAnally v. State,* 74 Ala. 9; *People v. Woodward,* 13 Am. Rep. 176; *Knapp's Case,* 20 Am. Dec. 524; 10 Am. Dec., 607 and note; 1 Am. & Eng. Ency. Law 61 and 67, and notes.

CHAS. G. BROWN, Attorney-General, for the State, cited *Alsabrook v. State,* 52 Ala. 24; *Blount v. State,* 49 Ala. 387; *Jolly v. State,* 94 Ala. 19; *Turner v. State,* 97 Ala. 57; *Tanner v. State,* 92 Ala. 1; *Martin v. State,* 89 Ala. 115.

SHARPE, J.—It is questioned whether this record contains the necessary affirmative showing that defendant was in court when his trial day was appointed. He was indicted as Buck Ferguson alias Buck Fergerson. His appearance bond bears the signature of W. B. Ferguson. In the order setting the day for trial the case is styled as The State v. W. B. Ferguson, and contains a recital to effect that "the defendant W. B. Ferguson alias Buck Ferguson" was then present in open court. Entire accuracy respecting the designation of defendant would have required strict conformation in this record entry to the indictment instead of to the indictment in part and the bond in part; but the preservation therein of one of the names by which the defendant was prosecuted is sufficient to at least *prima facie* identify him as the person referred to as being present. The word *alias* is used in the indctment as the equivalent of *alias dictus* or *otherwise called,* and indicates that the person referred to bears both names laid under the *alias,* but that he is called by one or the other of those names.—*Evans v. State,* 62 Ala. 6.

In *Hughes v. State,* 1 Ala. 655, cited for defendant, it was considered that in a capital case pleas should be entered so as to form an issue before the jury was sworn to try and render a verdict upon the issue joined. That this was done in the present case the record discloses plainly. The law did not require an arraignment or the interposition of a plea before the special jurors were drawn.

Under our statute (Code, § 4308) which abolishes the common law distinction between accessories before the fact and punishes and makes guilty as principals "all persons concerned in the commission of a felony whether they directly commit the act constituting the offense or aid or abet in its commission, though not present," the guilt of an accused of a felony may be es-

tablished by proof that he contributed to the criminal result by words or acts intended to and calculated to incite or encourage its accomplishment, whether he was present at its consummation or not.—*State v. Tally*, 102 Ala. 25; *Raiford v. State*, 24 Ala. 106; *Hughes v. State*, 75 Ala. 31; *Brunson v. State*, 24 Ala. 37; *Griffith v. State*, 90 Ala. 583. It is not essential to the incrimination of one so participating in a criminal act that it be done in respect of time, place, or mode, according to any prearranged or instigated plan. *Griffith's case, supra.*

The shot which produced the homicide in question was fired by defendant's son, John Ferguson, while the defendant was from about 130 to 200 yards away, and the theory of the prosecution was that the firing was in execution of a conspiracy between him and the son or that he was an aider or abettor in the crime. There was evidence tending to prove animosity as between the deceased Andrews and his father and brother on the one part, and defendant and his son on the other part. A witness testified that about a week before the killing defendant said to him: "I am under bond as postmaster and do not intend to be run out of the office. If we were to kill the Andrews it would not amount to anything more than the shooting of a dog; that the grand jury would pay no attention to it." This witness further testified, that on the same occasion defendant asked if he had seen the deceased and said: "We are looking for him down here and want to be ready for him when he comes." From another witness there was testimony to the effect that about four days before the killing, defendant said to him he "did not believe if John were to shoot one of the Andrews down, any more attention would be paid to it than the shooting of a dog. That the law would pay no attention to it, and that if he did get into it and kill one of them, he (defendant) had 300 acres of land to spend getting him out of it." There was evidence tending to show further that just before he was killed, deceased passed along a road by defendant's store, that some one called John Ferguson's attention to his approach, whereupon John left

the store with a gun and went to defendant's stable lot which was by the road the deceased was travelling and between one and two hundred yards from the store; that after the deceased passed the store, defendant closed the store, and armed with a pistol followed in the same direction and had gone about forty or fifty yards when John firing from the stable lot, killed the deceased. When this was done, by reason of an elevation in the road, John and the deceased were not in view of defendant, but he proceeded in the direction of the firing to near the place where the deceased lay dead. There was other evidence, and some of it was in conflict with part of what we have stated; but the foregoing is sufficient to indicate that the question of whether defendant effectively conspired with, counseled or encouraged the slayer to the commission of the crime belonged exclusively with the jury. A conspiracy may be established by evidence wholly circumstantial and without proof of an express agreement between the conspirators.—*Tanner v. State,* 92 Ala. 1; 3 Greenl. Ev. § 93.

But the accomplishment of the object of a conspiracy necessarily ends the conspiracy itself so far as it involves that accomplishment. Subsequent happenings are not evidential of a past conspiracy unless they are such as under all the circumstances may afford ground for inference that such conspiracy had existed. We think the trial court should have sustained the objections to the several parts of the testimony which collectively were to effect that after the shooting, and on the same afternoon, defendant left by the back way, the store to which he and John had separately returned, and went towards the woods to which John had preceded him, and saw John between sundown and dark and returned late in the afternoon to the store, and that about three weeks afterwards John came to the defendant's house after dark, spent the night there and left before daylight.

The same natural impulses which the statute recognizes in exempting parents of an offender from punishment for aiding in his escape (Code § 4309), serves to account for defendant's association with his son

after the killing, clandestine though it may have been and intended to accomplish his son's concealment or escape. Neither in itself or in connection with any evidence in this record can such testimony be considered as affording any just inference that defendant was criminally connected with the homicide. The errors of its admission were probably prejudicial to defendant, and must work a reversal of the judgment.

A defendant is not entitled to exculpate himself by bringing evidence of his own acts and declarations when not a part of the *res gestae,* or of some transaction or conversation partially developed by the State.— *Roberts v. State,* 68 Ala. 516; *Billingslea v. State, Ib.* 486; *Stewart v. State,* 63 Ala. 199. This principle applies to the inquiries proposed by defendant as to whether shortly before the killing he requested Phillips "to talk to his son and the Andrews and to get them to drop the trouble between them," and of whether on the night after the killing defendant visited the home of the mother of the deceased.

The inquiry of Phillips, "if in his judgment the defendant could have seen Will Andrews or any one else coming along the road before he reached the store as it led by the defendant's store from the position occupied by the defendant at the time," called merely for the expression of opinion by the witness and was therefore objectionable.

Whether the father of the deceased was sober on an occasion of a quarrel between him and defendant some days before the shooting, and whether immediately after the shooting one of the Andrews boys came with a gun from towards defendant's store were irrelevant inquiries, calling for no part of the *res gestae.*

The question addressed to defendant by his counsel, "Were you or not in any way knowing to the purpose of John to kill Will Andrews before he had killed him or were you in any way connected with the killing?" embodied an improper invitation to the defendant to state a conclusion involving both law and fact, viz., whether what he did was sufficient to fix his status as a conspirator and so connect him with the killing.

[Rambo v. The State.]

The charges refused to defendant each assumed that proof of an agreement, understanding or design to actually kill the deceased were necessary to connect the defendant with the crime as a conspirator, whereas if he was a party to a conspiracy to merely shoot and maim the deceased without killing him, and the death followed as the direct proximate and natural result of a shooting furthered by his conspiring, his responsibility extended to the consequences, though not intended by him and rendered him liable to a conviction such as was had of manslaughter in the first degree, if not for a higher offense.—*Evans v. State*, 109 Ala. 11; *Tanner v. State*, 92 Ala. 1; *Turner v. State*, 97 Ala. 57; *Martin v. State*, 89 Ala. 115.

Reversed and remanded.