105 So.2d 691

### Henry SIMMONS
### v.
### STATE.
### 3 Div. 997.

Court of Appeals of Alabama.

May 20, 1958.

Rehearing Denied June 10, 1958.

———◆———

Rogers, Rogers & Scott, Greenville, for appellant.

John Patterson, Atty. Gen., and Robt. G. Kilgore, Jr., Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant has been found guilty of wilfully exploding dynamite at or under the dwelling house of Roland Spann, in which there was a human being.

The evidence presented by the State tended to show that at approximately 3:30 A.M. on the morning of 16 August 1955 dynamite was exploded under the house of Roland Spann. Mr. Spann, his wife, and twelve year old son were asleep in the house at the time.

The floor above the blast was knocked up about two inches, and a hole about three inches deep was blown in the ground.

Mr. Spann, after daylight, observed some barefoot tracks that led to and from a point on a dirt road where tire tracks indicated a car had been parked. The car had been parked approximately 230 yards from his house.

About 10:30 A.M. Sheriff Thomas, and his Deputy Stanford arrived at the scene. They observed the barefoot prints, and also saw the tire tracks. These tracks indicated that the car had turned around by heading into a little used road. There was a scraped place on the road embankment at this point.

The car tracks were followed until they reached a black top road.

Later that day Sheriff Thomas observed some tire tracks near the home of the appellant that corresponded to the tire tracks observed at the point near Spann's home.

That night about 10:30 he passed the appellant driving on Highway 31, going in an opposite direction to that he was driving. Turning around he apprehended appellant after a chase at high speeds.

The appellant was arrested, and his car taken to the jail yard.

There the car was examined and over objection of the appellant, Sheriff Thomas testified that dirt found impacted in a bumper guard corresponded to dirt at the point where the car had turned around.

The appellant was questioned in jail. He stated that he had been on the road south of where the car had turned around, just looking around.

Sheriff Thomas further testified that upon request the appellant removed his shoes; that his foot was broad across the toe, and

more or less tapered off toward the heel, and that was the type of track he found at Spann's house, and in his opinion the foot corresponded to the track.

As to the tire prints, and the tires on appellant's car, Mr. Thomas testified that tires were of the same type of tread as observed in the prints at Spann's house.

On cross examination Sheriff Thomas stated that it was his best recollection that there were three different makes of tires on the car. He was unable to describe the treads, or to draw a picture of them.

Mr. Stanford's testimony was substantially the same as Sheriff Thomas', though he did testify that the area in the vicinity of Spann's house was guarded and everyone kept off until Mr. Van Pruitt, a State Toxicologist, could reach the scene.

Mr. Pruitt testified that he could not make a cast of the foot prints or of the tire tracks because of the dryness of the soil. Further, the camera he had brought with him could not be used to make pictures of the prints because it required a different lens.

The following day Mr. Pruitt saw the appellant's automobile in the jail yard, and observed the tires, and the mud under the bumper guard and in the tire treads. This soil corresponded to the type observed by him at Spann's home. He stated that the tire treads corresponded to the tire tracks he had observed at Spann's house, and appeared to be similar as far as he could tell.

On cross examination Mr. Pruitt stated that there were certain areas in the sand where the tire treads could be distinguished, but not in minute detail "other than just a gross appearance of that tread as you would look at it."

The evidence presented by the defense was directed toward establishing an alibi, and tended to show that he had been on a picket line until about 10:30 P.M. on the night in question, and had then returned to the union hall where he had remained until about 5:00 A.M.

The appellant also presented several character witnesses.

The record shows the following during the cross examination of Deputy Stanford:

"Q. I'll ask you, Mr. Stanford, if, when in that jail house you all said something about making a cast of Henry Simmons' foot he said—

"Mr. Kettler: Now, we object to that Your Honor.

"The Court: Objection sustained.

"Mr. Rogers: We except. We propose to show, if the Court please, that if it was not a fact that they said something about taking a cast of his foot and this defendant, Henry Simmons, told them to bring the mold on and he would let them make a cast of his foot.

"Mr. Kettler: And we object.

"The Court: Objection sustained.

"Mr. Rogers: We reserve an exception."

In his direct examination Mr. Stanford had testified that during the questioning of the appellant he had asked the appellant if he minded removing his shoes; the appellant had done so, he had looked at his foot, and from that observation, and comparing it with the foot prints at the Spann home, "it looked like the same foot that made that track."

Again, during the direct examination of the appellant, as to his statement after his arrest, the record shows:

"A. No, the Dr. wasn't there, Mr. Hartley and Mr. Werth Thomas and the Deputy, and Mr. Walt Taylor.

"Q. Walt Taylor? Did you tell them that you were willing to go down there and get the clay and stand on it— put your foot on it?

"Mr. Kettler: We object, Your Honor.

"The Court: Objection sustained.

"A. They asked me would I mind—

"Mr. Kettler: Wait a minute—we objected.

"The Court: I sustain the objection.

"Mr. Rogers: We reserve an exception. Your witness."

Almost this identical point was considered by the Texas Court of Appeals, in Bouldin v. State, 8 Tex.App. 332. That court, in reviewing the question wrote:

"We are further of opinion that the court erred, as shown by the third bill of exceptions, in not permitting defendant to prove, if he could, his willingness to try his shoe in the footprints found upon the ground, and supposed to have been made by the assassin, and also that he requested the parties having him under arrest to measure his horse's foot and apply the measure to the horse-tracks supposed to have been made by the animal ridden by the assassin to and from the place of killing. The evidence being wholly circumstantial, every fact and circumstance calculated to illuminate the transaction should have been permitted to go to and be weighed by the jury. There is no telling what effect the fact that defendant was willing to subject himself and horse to tests of actual measurement with the physical facts appearing from the tracks left upon the ground would have had upon a jury passing upon a case wholly of circumstantial evidence. If it was much or little, defendant was nevertheless entitled to have the jury to know, by the evidence that when he was first brought to face the tracks of the murderer he did not shun contact or comparison with them, but, on the contrary was anxious and insisted that the best tests that could have been made

should then and there be made by those investigating the matter and holding him in custody as the perpetrator of the deed."

■ We think the doctrine of this case sound.

Further however, additional legal principles we think dictate the propriety of the admission of such evidence.

The Attorney General argues that the court properly sustained the objections in the two above instances, in that the answers sought were self serving statements by the accused.

■ It is axiomatic that as a broad general rule, self serving statements by an accused are inadmissible in evidence unless they form a part of the res gestae.

■ However, it is equally well established that when in the examination of a witness a party brings out part of a transaction or conversation, the other party may inquire fully into the transaction, bring out the whole conversation on further examination. Colvin v. State, 37 Ala.App. 268, 70 So.2d 650; Kimbrell v. State, 18 Ala.App. 641, 94 So. 241; Campbell v. State, 32 Ala. App. 461, 27 So.2d 220; Key v. State, 240 Ala. 1, 197 So. 363.

Such principle makes admissible self serving statements which otherwise would be inadmissible. Maddox v. State, 159 Ala. 53, 48 So. 689; Ferguson v. State, 134 Ala. 63, 32 So. 760.

This doctrine we think compels the conclusion that the court erred in refusing to permit the defense to show the entire conversation, including that of the accused, at the interview.

Particularly is this true in view of the fact that the State's case was based on circumstantial evidence; that no casts or pictures of the prints were made, and further, apparently the prints were not even measured by ruler or otherwise.

The only description of the foot prints seen at the Spann home was that they were broad across the toe, and the heel more or less tapered off narrow. This very general description is but a description of any human foot print. Certainly no peculiar or definitive characteristics of the foot prints, nor of appellant's feet were noted that would have real probative force in showing that it was his feet that made the prints observed at the Spann home.

Other points of a substantial nature are urged as error by appellant. Concluding that the point above discussed compels a reversal of this case we reserve consideration of them.

Reversed and remanded.