# Billingslea *v.* The State.

## *Indictment for Murder.*

1. *Objections to indictment, on account of irregularities in formation of grand jury.*—The former decisions of this court have settled the principle, that there are only two classes of cases, in which objections to an indictment will be sustained, when based on irregularities in the formation of the grand jury : 1st, when the jurors were not drawn in the presence of the officers designated by law ; 2d, where there is some order of the court, or some action of the presiding judge, appearing of record, and relating to the organization of the grand jury, which is without any warrant in the statute, or is contrary to its provisions.

2. *Same.*—*Held,* in this case, where the record showed that fifteen of the original panel appeared, of whom only seven were accepted ; and the court thereupon ordered the sheriff to summon twenty-two other qualified persons, but that officer summoned only twenty-one, all of whom appeared, and from them the grand jury was completed ; that this was not an irregularity, of which the defendant could take any advantage by plea or objection to the indictment.

3. *Same.*—*Held,* also, no available irregularity or error, that the court excused one of the seven originally accepted, after the twenty-one additional persons had appeared, and supplied his place from them, without summoning two others in his stead.

4. *Sufficiency of indictment.*—An indictment for murder, in the form prescribed by the Code (Form No. 2, p. 991, § 4824), is sufficiently certain and definite, and is not violative of any constitutional provision, State or Federal.

5. *Relevancy of evidence for defendant, indicted for murder of his wife.* The defendant being on trial under indictment for the murder of his wife, from whom he had separated, and setting up the defense of insanity ; and it being proved that the deceased had given birth to an illegitimate child, prior to her marriage with the defendant, and was suspected of criminal intercourse, before or at a time proximate to the killing, with one S. ; the defendant can not be allowed to prove that said S. was the reputed father of said illegitimate child.

6. *Same; declarations of defendant.*—In such case, the declarations of the defendant himself, made before the killing, as to the troubles between him and his wife, fall within the general principle, which excludes the declarations of a party as evidence for him except when they constitute a part of the *res gestæ*.

FROM the Circuit Court of Dallas.
Tried before the Hon. JOHN MOORE.

The indictment in this case charged, in a single count, that the defendant, Wilson Billingslea, "unlawfully and with malice aforethought killed Mary King, *alias* Mary Billingslea, by shooting her with a gun; against the peace," &c. The defendant demurred to the indictment, assigning as grounds of demurrer, 1st, "because it fails to aver that the alleged killing was feloniously done;" 2d, "because it fails to aver that the defendant did kill and murder the said Mary King." The court overruled the demurrer, and the defendant then pleaded not guilty; but he afterwards asked leave to withdraw this plea, and to file a plea in abatement, on account of defects in the organization of the grand jury. This plea alleged, "that said indictment is illegal and invalid, and no valid judgment can be rendered on it, because of the original *venire* of grand jurors for said court, at its May term, 1880, at which said indictment was found, seven persons and no more appeared, and were selected as grand jurors, of whom Daniel L. Keenan was one; that the court thereupon ordered the sheriff to summon twenty-two persons, of the requisite qualifications for grand jurors, from which number said grand jury was to be completed; that the sheriff, for compliance with this order, summoned twenty-one such persons, and no more, from whom twelve persons were selected to serve as grand jurors; that after this the court excused one of the seven persons of the original *venire*, to-wit, Daniel L. Keenan, who had been selected as a grand juror the day before; and said grand jury was composed in this manner, and not otherwise, as by the record appears." The court refused to allow this plea to be filed, to which ruling the defendant excepted; and he then moved to quash the indictment, "on the grounds and facts set forth in said plea," and reserved an exception to the overruling of this motion.

On the trial, as the bill of exceptions shows, it was proved by the witnesses for the prosecution that the deceased was the wife of the defendant, or had lived with him as his wife, until some time in August, 1879, when he left her, declaring "he never intended to live with her again, and did not care a damn what became of her;" that he removed about a mile distant, while she continued to live on the place where he left her, and worked with one Jerry Moore, until the latter part of March, 1880, when she was killed; and that she was sent by Jerry Moore, in company with his daughter, about three o'clock in the afternoon, to cut up briers in a piece of "new ground" about one hundred yards from his house. Jerry Moore testified, that while he was feeding his mules, about sundown, "he heard a screaming and loud talking in the direction of the new ground, and started immediately to

see what was the matter; that he had got within about fifty yards of them, when he saw the deceased have the defendant around the neck with her arm, and was imploring him not to shoot her; that the defendant had a gun, and was trying to get loose from her; that very soon he pushed her off with his left hand, with such force as to throw her down; that she got up, and started to run from him, when he shot her in the back, under the left shoulder, and then ran off; that the deceased was carried to the house of witness, and died in about a half hour; that the defendant came to the house after she was dead, and said that 'he had come to finish her—that he had quit her because she was after other men, and that he had seen her and Nelse Sturdivant on a log that evening, and had overheard their plans.'" Lucinda Moore, Jerry's daughter, who was working in the field with the deceased, testified that the deceased, not long after they had gone to the "new ground," "went back to the house to get some water; that she was gone but a short time, and witness could see her all the way going to and from the house; and that they then worked together until about sundown, when they started home," and seeing the defendant, with his gun in his hand, dodging about among the bushes, witness became frightened and ran home. West Waugh, a witness for the State, "testified that he and Nelse Sturdivant were sitting together on his lot fence, between sundown and dark, when the alarm came that the defendant had killed his wife; that he went to his house that evening about sundown, and Nelse got there a short time before him." Several other witnesses testified, on behalf of the State, that the defendant came to Selma the morning after the killing, and surrendered himself to the authorities, and voluntarily stated that he had killed the deceased, and 'that he would do it if it was to do over again; that he did not care what was done with him, and that he had no more feeling about it than that iron,' pointing to the grate in the fire-place.

"Several witnesses for the State testified, that they were well acquainted with the defendant, and that he was not insane at the time of the killing. Several witnesses for the defendant testified, in substance, that he and his said wife lived very unhappily together before he left her; that they had frequent difficulties, the defendant charging her with improper intimacy with other men, and especially Nelse Sturdivant. It having been proved that the defendant and the deceased had been married four or five years before the killing, and that she had a child at the time of their marriage, though she had never before been married; for the purpose of supporting the defense of insanity, a witness for

[Billingslea v. The State.]

defendant was asked by his counsel, who was the reputed father of said child, and if Nelse Sturdivant was not its reputed father." The prosecuting attorney objected to each of these questions, and the court sustained the objections; to which rulings exceptions were reserved by the defendant. " The defendant then asked the witness, for the same purpose as above stated, to state what the defendant said to him, or in his presence, before the killing, about the troubles between him and his said wife, the cause thereof, and about his love for the deceased ;" and he reserved exceptions to the ruling of the court in sustaining an objection to this question. " It was admitted on behalf.of the State, that Zeke Echols and Dick Tate, witnesses for the defendant, would swear, if present, that from their knowledge of the defendant, and his conduct and speech on many occasions in regard to his relations with his wife, occurring recently before the killing, they were satisfied that his mind was so disturbed as to amount to insanity, and that such state of mind continued up to the time of the death of the deceased ; and this statement was read to the jury as evidence for the defendant, without objection on the part of the State. And the foregoing was, in substance, all the evidence in the case."

B. F. SAFFOLD, for the prisoner.

H. C. TOMPKINS, Attorney-General, for the State.

SOMERVILLE, J.—The main questions presented in this case for our consideration relate to the organization of the grand jury in the court below. Of the eighteen persons originally summoned to constitute the regular panel, fifteen appeared, and answered to their names; and of these, *seven* only were accepted, the remainder being excused by the court from serving. The court thereupon ordered the sheriff to summon *twenty-two* suitable persons, possessing the requisite statutory qualifications ; this being twice the number needed to complete the organization, as demanded in such cases by the statute.—Code 1876, § 4754. The record does not show that the sheriff summoned more than *twenty-one* of this number, all of whom appeared, and from these the jury was completed under the direction of the court. The record further recites that, after the second *venire* was summoned, and had appeared, the court excused one Keenan, who was one of the *seven* originally selected from the first *venire*. It is insisted that these are irregularities of such a nature as to vitiate and render void the indictment in this case, which was found by the grand jury as thus organized.

Conceding that the points are properly raised by the record for our revision, we do not think they are well taken. In the first place, we will consider the irregularity on the part of the sheriff in summoning *twenty-one* persons, when the mandate of the court was to summon *twenty-two.* This error, we think, is cured by sections 4759 and 4889 of the present Code, as construed by the past decisions of this court. These sections read as follows:

"§ 4759. *Above provisions directory merely.*—The provisions of this article, in relation to the *selection, drawing,* and *summoning* of jurors, are *merely directory ;* and juries selected, drawn and summoned, whether at an earlier or later day, must be deemed legal, and possess the power to perform all the duties belonging to grand and petit juries respectively.

"§ 4889. *Objections to grand jury.*—No objection can be taken to an indictment, by *plea in abatement, or otherwise,* on the ground that any member of the grand jury was not legally qualified, or that the grand jurors were not legally drawn or summoned, or on any other ground going to the *formation of the grand jury, except* that the jurors were *not drawn in the presence of the officers designated by law ;* and neither this objection, nor any other, can be taken to the formation of a special grand jury summoned by the direction of the court."

These sections of the Code have been under review many times by this court, and we think the following principles can be deduced as having been settled. There are but two classes of cases in which objections can be sustained to an indictment, when they are based on irregularities in the organization of a grand jury : First, where such jurors "were not drawn in the presence of *the officers designated by law.*" Code, § 4889; *Boulo v. State,* 51 Ala. 18. Second, where there is some *order of the court* below, or some action of the presiding judge, appearing of *record* in the cause, and relating to the organization of the grand jury, which is *without any warrant* in the statute, or is *contrary to its provisions.* This embraces some judicial order, or act of *the court,* as contradistinguished from any act of its *officers* while ministerially executing any such order when lawfully made.—*Cross v. State,* 63 Ala. 40; *Finley v. State,* 61 Ala. 201; *Boles v. State,* 63 Ala. 30; *Berry v. State, Ib.* 126; *Yancy v. State, Ib.* 141; *Scott v. State, Ib.* 59.

We are unwilling to extend the principle settled in the cases of *Finley* and *Cross,* cited *supra,* any further than this ; and we therefore hold, that all irregularities in the selection, drawing or summoning of grand jurors, other than those specified above, are insufficient as grounds upon which to

[Billingslea v. The State.]

challenge the whole array. All other errors are cured by statute, the provisions relating thereto in the Code being merely *directory* and not mandatory, and irregularities of this nature are not reviewable in this court.—Code, § 4759.

Nor do we think there was any error in the action of the court excusing Keenan, without ordering two other persons to be summoned in his stead. It was competent to complete the jury from the *twenty-one* summoned to constitute the second *venire,* if they were sufficient in number, after allowing all proper excuses and challenges. There certainly was no excess of authority arrogated by the court in excusing Keenan after his acceptance, so far as shown by the record. The reasons for this action must be deemed sufficient, unless the contrary clearly appears. Imperative reasons may constantly arise for the exercise of such a power ; as, the sudden sickness of a juror, after his acceptance, and before the organization is complete; or the disclosure of his incompetency, which was before concealed, or unknown. The contingency which alone authorizes the court to act, in such cases, is the failure of as many as fifteen of the original panel to appear. This had happened, and the proper order was, thereupon, given as required by the statute. Our view is, that if a sufficient number appeared under the first order made to complete the jury, a second order was unnecessary. The statute is clearly susceptible of this construction, and it promotes the simplicity and economy of judicial procedure.

·It has been held more than once by this court, that the form of indictment for murder, as prescribed by the Code (p. 991), is sufficiently certain and definite, and is not violative of any provision of the constitution, State or Federal. We are satisfied with the conclusions reached on this subject by our predecessors in *Aikin v. The State,* 35 Ala. 399, and *Noles v. The State,* 24 Ala. 672, holding the form in question to be sufficient. The demurrer to the indictment was properly overruled, under the authority of these cases.

Nor can we see any error in the action of the court excluding the evidence sought to be elicited by the appellant, to the effect that one Sturdevant was the reputed father of an illegitimate child born of the deceased, who was defendant's wife. Such evidence was not made relevant by the fact that Sturdevant was suspected of criminal intimacy with deceased, before or at a time proximate to the killing. It had no tendency to establish the prisoner's innocence of the homicide imputed to him by the indictment.

So, the declarations made by the defendant, before the homicide, relating to the troubles between him and his wife, the deceased, were not admissible, and the objection to the

question calling for them was properly sustained. No principle is better settled, than the proposition, that a defendant can not be permitted thus to make evidence in his own behalf, unless the declarations, thus proposed to be introduced, constitute a part of the *res gestæ.—Taylor v. The State,* 42 Ala. 529; *Stewart v. The State,* 63 Ala. 199.

We discover no error in the record, and the judgment of the Circuit Court is affirmed.