# Linehan *v.* The State.

*Indictment for Murder.*

1. *Formation of grand jury; objection thereto.*—Section 4445 of the Criminal Code, restricting the legal grounds of objection to an indict-ment because of irregularity in the formation of the grand jury pre-ferring it, to the one ground that the jurors were not drawn in the presence of the officers designated by law, is not within the repealing clause of the act, creating the jury law, approved February 28, 1887, (Acts of 1886-87, p. 151; Cr. Code of 1886, pp. 131-135), and is, there-fore, still in full force and effect.

2. *Same; same; insufficient plea in abatement to an indictment.* Where jury commissioners, in the discharge of the duties imposed upon them, draw from the jury box a greater number of names than is sufficient to constitute a grand jury, and from such number select the persons who are to compose the grand jury, such action is con-trary to the provisions of the statute creating the jury law, approved February 28, 1887, (Acts of 1886-87, p. 151; Cr. Code of 1886, pp. 131-135), but such irregularity furnishes no ground for a plea in abate-ment to an indictment preferred by the grand jury so drawn. (BRICKELL, C. J., dissenting.)

3. *Organization of petit juries; drawing of special juries after regular jury is quashed; service upon defendant.*—Section 4316 of the Code of 1886, provides the authority and means for the organization of special petit juries in default of regular juries, and talesmen summoned under the authority of section 4327 can not be considered or treated as regular jurors for the week during which they are summoned; and when after the quashing of the regular venire, which was summoned and impannelled for the week in which a capital case is set for trial, the court makes an order "to summon from the qualified citizens of said county at large thirty-six persons to serve as jurors under sec-tion 4327 of the Code, to form three entire juries for this, the third

**OF ALABAMA.**

[Linehan v. The State.]

week, of the present term of the court," the persons summoned as jurors under this order do not constitute the regular venire of petit jurors for the week authorized by the statute to form part of the venire for the trial of a capital case, and the service of a copy of such jurors upon the defendant, with a copy of the special jurors drawn for the trial of the capital case, is not the serving upon the defendant a copy of the regular juries organized and impannelled for the week in which he is to be tried, as required by the statute; and the venire for the trial of the capital case being composed of jurors so drawn should be quashed upon proper motion made by the defendant.

4. *Evidence; admissibility of statements made by the defendant to show his animus toward the deceased.*—On a trial under an indictment for murder, in order to show the *animus* of the defendant towards the deceased, evidence that two months before the homicide, just after the deceased had exchanged some words with the defendant and had passed down the street, the defendant said he would show deceased "how to throw slurs on him," and that he then got a pistol from a store near by and went in the direction the deceased had gone, is admissible.

5. *Same; drunken condition of a witness irrelevant and inadmissible.* On a trial under an indictment for murder, where the only testimony of a witness for the defendant was to the fact that he was present at the time of the homicide and was neither drunk then nor a half hour afterwards, it is not permissible on the examination of a witness for the State to ask if said witness for the defendant was drunk a half hour after the homicide; the fact whether such witness was drunk at such time being entirely irrelevant to such issue, and furnishing no ground for his contradiction.

6. *Same; improper method of proving how rapidly the deceased was advancing on the defendant at the time of the homicide.*—On a trial under an indictment for murder, where it is shown that at the time the defendant fired upon the deceased, the latter was advancing upon the defendant, it is an improper method of proving how rapidly the deceased was advancing upon the defendant, by the solicitor walking across the court-room between the witness being examined and the jury, and asking the witness if the deceased was walking as fast as he, the solicitor, was then walking.

7. *Homicide; charges to the jury erroneous if they ignore the question of fault on the part of the defendant in bringing on the difficulty.*—On a trial for murder, charges which instruct the jury that "if the circumstances are such as to create a reasonable belief that it is necessary to take the life of another to preserve one's own life, or his person from great bodily harm, the law attaches no blame;" or that "the principle on which mutual combat extenuates homicide is, that the blood is heated by the fight, which concurring with the instinct of self-preservation, silences the voice of reason," are erroneous and properly refused, because they ignore the question of fault on the part of the defendant in bringing on the difficulty.

[Linehan v. The State.]

8. *Homicide; burden of proof; charge misplacing the burden of proof as to retreat.*—On a trial for murder, unless the evidence which proves the homicide proves also its excuse or justification, the burden is on the defendant to show that there was a necessity to take the life of the deceased, or that the circumstances were such as to impress on the mind of a reasonable person a reasonable belief that there was such a necessity, and further, that there was no reasonable mode of escape; and a charge which instructs the jury "that if the defendant fired the fatal shot when there was present a pressing necessity to shoot, in order to save the defendant from great bodily harm, then the burden is on the State to show that the defendant could have escaped from the difficulty without increasing the peril, and unless the jury believe from the evidence beyond a reasonable doubt that the defendant could have reasonably escaped from the difficulty without increasing peril, then the defendant had the right to fire the fatal shot, whether the necessity was real or only reasonably apparent to the defendant," is erroneous and properly refused, because it misplaces the burden of proof as to retreat.

9. *Same; burden of proof as to freedom from fault in bringing on the difficulty; charge of court to jury.*—The burden of proof that the defendant was not free from fault in bringing on the difficulty is never upon the State until the ingredients of self-defense have been established by the evidence for the defendant, and charges requested by the defendant invoking the right of self-defense, which ignore his freedom from fault in bringing on the difficulty, are erroneous and properly refused.

APPEAL from the Circuit Court of Walker.

Tried before the Hon. JAMES J. BANKS.

The appellant was indicted and tried for the murder of one Allen M. Oakley, and convicted of murder in the second degree, and sentenced to the penitentiary for twenty-five years.

The defendant filed the following plea in abatement: "Comes the defendant and pleads to the said indictment and says that the persons composing the said grand jury which returned said indictment were not drawn as required by law, for that the said jury commission of Walker county, Alabama, drew from the jury box over twenty-five names, and from the names as drawn, selected the persons who composed said grand jury, without regard to the order in which their names had been drawn from the jury box, and placed on said grand jury persons whose names had been drawn after they had drawn twenty-one names from said jury box. This

[Linehan v. The State.]

he is ready to verify, wherefore he prays judgment that the said indictment be abated."

The State, by its solicitor, demurred to this plea upon the following grounds : 1. That said plea does not aver that the grand jurors composing said grand jury were not drawn in the presence of the officers designated by law. 2. That said plea avers that the said grand jury which returned said indictment was not drawn as required by law, without averring that said grand jurors were not drawn in the presence of the officers designated by law. 3. That from all that appears in said plea, said grand jury was drawn as required by law. 4. That said plea does not show that the said grand jury were not drawn from the jury box in the manner required by law. This demurrer was sustained, and the defendant duly excepted.

The facts as to the arraignment of the defendant, the organization of the petit jury, and the summoning of the special venire, and service thereof on the defendant, are sufficiently stated in the opinion.

The defendant moved the court to quash the venire for the trial of this cause, upon the following grounds : 1. The copy of the venire served on the defendant contains the names of S. B. Cox and G. W. Hogg, and their occupation is not shown on said copy. 2d. Because the venire of special jurors, a copy of which was served on this defendant was drawn long before this cause was set down for trial on this day. 3d. Because the case was set down for trial at a former day of this term of the court, and the list of special jurors served on this defendant for the trial of this cause today, together with the list of regular jurors drawn and summoned for this week, constituted the venire for the trial of this cause at said former day, and the panel of the regular jurors organized for this week has been quashed. 4th. Because there has been no order of the presiding judge setting this case for trial to-day. 5th. Because there has been no order for a copy of the indictment and of the venire for the trial of this cause to be served on the defendant since the panel of the regular jurors organized for the week has been quashed. 6th. Because the sheriff has not served on the defendant for the trial of this cause on this day either a list of the persons drawn and summoned to serve as petit jurors for this week of this term of the court, nor

a list of the persons composing the regular petit juries organized for this week. 7th. Because the sheriff served on the defendant for the trial of this cause a copy of the list of special jurors drawn to try this cause and a copy of the venire summoned by the sheriff of said county by order of the court under section 4327 of the Code of 1886 for the third week of the present term of the court, as a copy of the venire from which the jury to try this case shall be selected. 8th. Because the list of jurors served on this defendant contains the names of thirty-five persons who constitute the panel of the petit juries organized for this week of this term of the court. 9th. Because petit juries were returned to serve during this week of this term of the court, and regular petit juries were organized to serve during this week of this term of the court, and the panel of said petit juries has on motion of this defendant been quashed. 10th. Because the sheriff served on this defendant as a copy of the venire, from which the jury to try this case shall be selected, a list of persons summoned by the sheriff from the qualified citizens of Walker county and organized as the venire for this week, the regular panel drawn by the jury commissioners of Walker county for this week having been quashed. 11th. Because the presiding judge directed the sheriff whom to summon to serve as the regular jurors for the trial of this cause. 12th. Because the presiding judge on this day ordered the sheriff to summon certain persons to serve on the regular jury as the circuit clerk called the names from a list of names held by the clerk, and the sheriff did so summon said persons; the said persons being the ones served on this defendant as the venire for the third week. 13th. Because the copy of the venire served on the defendant from which the jury to try this cause shall be selected shows neither the beat nor the occupation of the persons named in said venire. 14th. Because the persons served on this defendant as constituting the venire for this week, were summoned as jurors on this day.

The facts upon which this motion was based pertain to the summoning of the special venire, and the summoning and organization of the jurors for the week, and the service of the venire and indictment upon the defendant, all of which, as stated above, are set forth in the

opinion.　This motion was overruled, and the defendant duly excepted.

The evidence for the State tended to show that the homicide occurred in the following manner : One George Fram was to have a trial before the Mayor of Carbon Hill, of which town Oakley, the deceased, was marshal. The cause against Fram was continued, and upon the defendant asking Oakley why it had been continued, Oakley replied that he was running the court, and thereupon a quarrel ensued.　The defendant started up the street from where the quarrel was had, and cursed Oakley ; thereupon Oakley told the defendant he must not curse him, and upon the defendant using a very opprobrious epithet towards him, the deceased walked towards the defendant, and when within about 8 or 10 feet of him, the defendant turned and shot at Oakley ; Oakley turned around and started in the opposite direction, and the defendant then shot him in the back, from the effects of which wound Oakley staggered and fell ; the second shot being the shot that killed him.　The State's testimony further tended to show that just after the deceased was shot, the defendant gave himself up, and said to the person to whom he surrendered, that he shot Oakley as he turned to run, "and that if he had not killed him he would go back and finish him."

The evidence for the defendant tended to show that upon deceased being asked why the trial of Fram was continued, he became enraged and pushed the defendant away from him ; that as the defendant walked up the street, he cursed the deceased, whereupon the deceased started after him, and ran his right hand to his right hip pocket, and was pulling and jerking at something in his pocket when the defendant shot ; that as Oakley turned his left side to the defendant, he was still trying to pull something out of his pocket, whereupon the defendant fired the second shot.　There was testimony for the defendant that immediately after the shooting Oakley was examined, and a pistol was found in his right hip pocket.

During the examination of George Fram as a witness for the defendant, he testified among other things, that he had taken a few drinks before the killing, but was not drunk at that time, nor was he drunk a half hour later, when he went home with J. A. Johnson.　The State,

in rebuttal, introduced J. A. Johnson as a witness, who, after stating that he knew Fram and saw him at the homicide, was asked by the solicitor: ''What was Fram's condition a half hour after the killing?'' The defendant objected to this question, on the ground that it was irrelevant and immaterial. The court overruled the objection, and the defendant duly excepted. The witness answered that a half hour after the shooting Fram was very drunk. The defendant moved to exclude this answer of the witness from the jury, and duly excepted to the court's overruling his motion.

While cross-examining the witness James Woodman, introduced by the defendant, the solicitor asked the witness about how fast Oakley was walking when he was advancing on the defendant. The solicitor got between the witness and jury and walked across the floor and asked the witness, if Oakley walked as fast as he was walking then. The defendant objected to the solicitor walking to enable witness to testify as to Oakley's speed. The court overruled the objection, and the defendant then and there duly excepted.

The facts pertaining to the other rulings upon the evidence, to which exceptions were reserved, are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (2.) ''The necessity to take life need not be actual. If the circumstances are such as to create a reasonable belief that it is necessary to take the life of another to preserve one's own life, or his person from great bodily harm, the law attaches no blame.'' (11.) ''The principle on which mutual combat extenuates homicide is, that the blood is heated by the fight, which, concurring with the instinct of self-preservation, silences the voices of reason.'' (26.) ''If the defendant fired the fatal shot when there was present a pressing necessity to shoot in order to save the defendant from great bodily harm, then the burden is upon the State to show that the defendant could have escaped from the difficulty without increasing the peril, and unless the jury believe from the evidence beyond a reasonable doubt that the defendant could have reasonably escaped from the difficulty without increasing peril, then

[Linehan v. The State.]

the defendant had a right to fire the fatal shot whether
the necessity was real or only reasonably apparent to the
defendant.  If he fired the fatal shot under these cir-
cumstances and for the sole purpose of saving his life
and he was without fault in bringing on the difficulty,
then the jury must find the defendant not guilty." (27.)
"The court charges the jury that a person charged with
murder, who seeks to justify himself on the ground of
threats against his own life, is permitted to introduce
evidence of such threats so made and the same should be
regarded as affording a justification for the killing, if it
be shown that, at the time of the homicide, the person
killed, by some act then done, manifested an intention
to execute the threats so made, or reasonably appeared
to defendant to be so doing, if said threats had been pre-
viously communicated to the defendant."    (28.)    "The
court charges the jury that if the defendant relies on a
justification of his acts partly by threats made against
him by Allen Oakley before the killing, then such threats
will be a justification of the killing, if the jury further
find from the evidence that deceased, at the time of the
killing, was manifesting an intention of carrying such
threats into execution, by a positive act then done, or
that from the acts of Allen Oakley at the time of the
killing, it would have appeared to a reasonable mind, un-
der the circumstances, that the deceased was attempting
to execute the threats against the defendant, and there
was no reasonable means of escape without increasing
the danger."

There were many other charges asked by the defen-
dant, to the refusal to give each of which there were sep-
arate exceptions reserved ; but under the opinion on this
appeal, it is unnecessary to set them out at length.

COLEMAN & BANKHEAD, for appellant.—1. The court
erred in sustaining the demurrer to the defendant's plea
in abatement.  The provisions of the jury act of 1886-87,
are mandatory and not directory.—*Steele v. State*, 111
Ala. 32 ; *Peters v. State*, 100 Ala. 10 ; *Wells v. State*, 94
Ala. 1.

2. There was error in the court's refusing to quash the
venire of the petit jurors.  The petit juries for the week,
after the regular petit juries for the week were quashed,
were organized under section 4327 of the Code, as shown

by the record.   But section 4327 of the Code only author-
izes the summoning of a juror for one day, unless en-
gaged in the trial of an issue.   We admit that under
section 4327 of the Code the court can have a jury to try
all cases except capital cases, but we submit that under
this section the court can not have a jury to try a capital
case, because it does not confer on the court the right to
organize petit juries for the week, but only for a day.

WILLIAM C. FITTS, Attorney-General, for the State.—
1. There was no error in the court's sustaining the de-
murrer to defendant's plea in abatement.—Code of 1886,
§ 4445 ;  Sampson v. State,  107 Ala. 76 ; Roe v. State,  82
Ala. 68 ;  Harrington v. State, 83 Ala. 9.
2. The jury organized after the quashing of the regu-
lar venire, was properly organized under the statute.—
Wells v. State, 94 Ala. 1.

HARALSON, J.—1. Section 4445 of the Code pro-
vides that "no objection can be taken to an indictment,
by plea in abatement, or otherwise, on the ground that
any member of the grand jury was not legally qualified,
or that the grand jurors were not legally drawn or
summoned, or on any other ground, going to the forma-
tion of the grand jury, except that the jurors were not
drawn in the presence of the officers designated by law."
The plea made in this case to abate the indictment
was for reasons other than that the grand jury was not
drawn in the presence of the officers designated by law,
and is based on reasons in direct opposition to the pro-
visions of this section of the Code.   There is no ground
for the plea if that section of the Code has not been re-
pealed, but is still of force and effect.   Section 17 of the
act of February 28, 1887, (Cr. Code, pp. 131-135), pro-
vides, that "all laws, general and special, conflicting
with the provisions of this act be, and the same are,
hereby repealed ; but all laws now in force in rela-
tion to jurors, their drawing, selection and qualification
not in conflict with this act, are hereby continued in full
force and effect."   Said section 4445 has been frequent-
ly recognized by this court as unrepealed and still of
force and effect.—Tanner v. The State, 92 Ala. 1 ; Davis v.
The State, 92 Ala. 24 ; Welsh v. The State, 96 Ala. 92 ; Ger-
molgez v. The State, 99 Ala. 216 ; Sampson v. The State,

107 Ala. 76. Our uniform ruling has been to disallow all defenses, save one, which rest on irregularity in the drawing and impannelling of grand juries, except the statutory ground that they "were not drawn in the presence of the officers designated by law;" and the additional exception is, that there is some order of the court, or some action of the presiding judge, appearing of record, and relating to the organization of the grand jury, which is without warrant in the statute, or is contrary to its provisions.—*Billingslea v. The State*, 68 Ala. 486; *Murphy v. The State*, 86 Ala. 46.

In the last case cited, it was said, STONE, C. J., speaking for the courts "We have several times held, that the later statutes regulating the drawing and impannelling of juries have not repealed section 4445, Code of 1886, section 4889, Code of 1876." In that case, the objections to the organization of the grand jury, were substantially the same as those here urged, by plea in abatement, to the proper and legal organization of the grand jury in this case, and the court held, that under the provisions of said section 4445 of the Code, which were still of force, the court did not err in overruling the motion to quash the *venire*.

The cases relied on by the appellant in support of the motion,—*Steele v. The State*, 111 Ala. 32; *Johnson v. The State*, 102 Ala. 1; *Wells v. The State*, 94 Ala. 1,—all related to the drawing and impannelling of petit juries. Section 4445 relates alone to the grand and not petit juries, and there is no provision in our law as to petit juries, touching their drawing and formation, such as is made in said section in reference to grand juries. If such provision had been made, the drawing and formation of the petit jury would stand, necessarily, on the same footing with the grand jury. The demurrer to the plea in abatement was properly sustained.

2. The defendant was arraigned in open court, and pleaded not guilty, on the 25th of August, 1896, and Tuesday, the first day of September, following, was set for the trial of the cause. The court, at that time, drew from the jury box of the county the names of thirty persons, as special jurors for the trial of the cause, a list of whom was made out by the clerk, and the sheriff was ordered to summon them to appear on the day set for the trial. The sheriff was also ordered to serve on the

defendant, at least one entire day before the day set for the trial, a copy of the indictment, and a list of the jurors drawn and summoned for that, the third week of the term, together with a list of the said thirty special jurors drawn for the trial of defendant.

On Monday, the 31st of August, 1896, the sheriff made his return, in open court, of the venire of petit jurors which had been drawn, for the third week of court, and whom he had been ordered to summon for that week. The defendant being in open court on that day, moved the court to quash the regular *venire*,. drawn and summoned for that, the third week of the term, and, as is recited in the minute entry, "having introduced evidence in support of said motion, showing that said *venire* had not been drawn according to law, it was considered by the court that said motion be sustained, and said *venire* was quashed;" and the "cause was continued to Wednesday, the 2nd day of September, 1896." It had, theretofore, on the 25th of August been set for trial on Tuesday, the 1st of September. The sheriff was then, on Monday, at the time said *venire* of petit jurors for the third week of the term was quashed, ordered by the court—employing the language of the order—"to summon from the qualified citizens of said county at large, thirty-six persons to serve as jurors under section 4327 of the Code, to form three entire juries for this the third week of the present term of court;" and thereupon the sheriff immediately summoned thirty-six jurors, and they were present in court, and were organized into juries Nos. 1, 2 and 3 for that week in court; the three juries being composed of thirty-five men, one having been excused for reasons appearing sufficient to the court. The sheriff was ordered to serve on the defendant, one entire day before Wednesday, the 2d of that month, a copy of the special jurors who had been drawn on the 25th of August preceding, and summoned for Tuesday, the first day of that month, for the trial of defendant, together, as the order states, "with a copy of the regular jurors organized and impannelled for the present week under section 4327 of the Code, and a copy of the indictment in this cause."

When the case was called on Wednesday, the 2d day of September, 1896, the bill of exceptions states, the presiding judge said: "I think that under the statute,

it is necessary for you (addressing the sheriff) to re-
summon those jurors. As their names are called, re-
summon them. As the clerk calls them, summon them,
Mr. Sheriff." The clerk then proceeded to call the names
of the thirty-five persons who had been summoned and
organized into petit jurors on Monday, August 31st,
after the regular juries organized for the week, com-
posed of the same persons, had been quashed, and as
the clerk called the names of the said thirty-five persons,
the sheriff then and there summond each of them. The
solicitor then announced that the State was ready for
trial, "and the defendant, being called upon to announce,
objected to being put on trial this day because there had
been no order setting the case for trial on this day."
The court overruled the objection, and required the de-
fendant to announce, "and thereupon, [as the bill of
exceptions states], before announcing, and before the
selection of the jury was begun, the defendant filed the
following written motion." Here follows in the bill the
said motion of defendant, consisting of fourteen sepa-
rate grounds. The defendant offered in evidence, on the
trial of this motion, the entire record of the cause,—the
returns of the sheriff as to how he had executed the or-
ders of the court requiring him to serve on the defend-
ant a copy of the indictment and a list of the jurors for
the trial of the cause, which is set out in full, showing
the names of the thirty-five persons who have been organ-
ized into jurors for the third week of the court,—constitu-
ting the *venire* that had been quashed on motion of
defendant.

Without referring specifically to all the grounds of
this motion, covering every phase of objection to the
*venire*, it is sufficient to say, that said section 4327, un-
der which the thirty-five jurors were ordered by the
court to be summoned for the third week of the term
relates, by its term, to such jurors as are authorized by
the statute to be supplied from the bystanders or from
the county at large, "when by reason of challenges, or
any other cause, it is rendered necessary  *  *  *  to
supply any deficiency on a regular jury, or to form one
or more juries as the occasion may require." "Such
jurors are called talesmen, and must not be compelled
to serve longer than the day for which they were re-
spectively summoned, unless detained longer on the

6

trial of an issue, or the execution of a writ of inquiry, submitted to the jury of which they are respectively members, or unless they are re-summoned''—as talesmen of course. The "occasion" requiring the summoning of these talesmen in this case was the quashing of the regular *venire* of jurors for the week. They were to be summoned for one day only, subject to be required to remain longer on one of the conditions named in the statute. Under and by the provisions of this section, the court found no authority for impannelling regular juries for the entire week, to serve in the place and for the time and for all purposes of the regular juries drawn and impannelled for the week,—such as had theretofore been discharged on the motion of defendant. Certainly, the court was without authority, itself, to summon these men, as it did, and make them a part of the *venire* to try the defendant. The court could not, of its own volition, place any particular number of jurors on defendant. He had the right to the methods the law prescribed for the selection of jurors to try him. Section 4316 of the Code, not repealed, provides the authority and the means for the organization of special in default of regular juries; but the special juries for the third week as organized by the court, were not, as the order shows, supplied and organized under this section. Talesmen, such as those placed upon defendant, by the direction of the court, are in no legal sense regular jurors for the week, authorized by statute to form a part of the *venire* for the trial of a capital case. Such talesmen as are supplied to complete the regular juries for any week of the court, under section 9 of the act of 1887, (Criminal Code, p. 133), of course, are competent for such a trial. *Kemp v. The State*, 89 Ala. 52; *Hester v. The State*, 103 Ala. 83; *Evans v. The State*, 109 Ala. 11; *Steele v. The State*, 111 Ala. 32.

The motion of defendant to quash the venire placed on him for his trial should have been granted.

3. John R. Cooper, for the State, testified that about two months before the killing of Oakley by defendant, Oakley, one day, passed defendant on the street, and some words were exchanged between them, and Oakley went on down the street. The solicitor asked the witness what defendant said after Oakley left, and witness replied, that defendant said, ''he would show Oakley

how to throw slurs on him ;'' and this was all it appears he said. The question and answer were objected to, but there was no error in allowing each. The evidence sought was intended to show a threat, and therefrom the *animus* of defendant towards deceased ; and the answer tended to show it was bad.—*Roberts v. The State*, 68 Ala. 164 ; *Burke v. The State*, 71 Ala. 377 ; *Gunter v. The State*, 111 Ala. 23.

The solicitor then asked the witness, "What Linehan did then?" The defendant objected, because irrelevant, and because it called for the particulars of a previous difficulty, which objections were overruled. The witness answered : "Linehan stepped in a store near by and got a pistol and put it in his pocket, and went down the street in the same direction that Oakley had gone." The rule is that the fact of a previous difficulty between the accused and the deceased is competent evidence as tending to show malice, ill-will or a motive for the killing, but the particulars or merits of the difficulty can not be inquired into.—*Garrett v. The State*, 76 Ala. 18. It is also held, that threats of defendant running through many months and coming down to a time very near the homicide, are properly admissible. They are admissible on the inquiry of malice *vel non*.—*Rains v. The State*, 88 Ala. 98 ; *Roberts v. The State*, 68 Ala. 164, *supra*. An act may imply a threat or menace and display motive, as well as words.

4. A witness, George Fram, examined by the defendant, testified, among other things, that he was present at the shooting, had taken a few drinks, but was not then drunk, nor was he drunk a half hour afterwards. The State afterwards examined one Johnson, to show that he knew said Fram, and half an hour after the shooting he was very drunk. The bill of exceptions purports to set out all the evidence, and it is not shown that Fram testified to any other fact in the case, except that he was not drunk at the times stated. This alone was entirely irrelevant to any issue in the cause ; and furnished no ground for contradicting him by the State.

5. The illustration made by the solicitor before the jury, by walking across the floor between a witness being examined and the jury, and asking the witness, if Oakley, when it was said he was advancing on the defendant, walked as fast as he, the solicitor, was then

[Linehan v. The State.]

walking, was an improper method of proving how fast or slowly Oakley walked on the occasion referred to. But, it does not appear that the question was answered, and we pass it, with the above disapproval of such methods of eliciting evidence in the trial of causes.

6.   Charges 2 and 11 asked by the defendant were properly refused. They each ignore the question of fault on the part of defendant in bringing on the difficulty.

Charge 26 was properly refused. The burden was on the defendant to show that there was a necessity to take life, or that the circumstances were such as to impress on the mind of a reasonable person, a reasonable belief that there was such a necessity, and that there was no reasonable mode of escape, unless the evidence which proved the homicide proved also its excuse or justification. The burden of proof that defendant was not free from fault in bringing on the difficulty is never on the State, until the ingredients of self-defense have been established by the defendant.—*Howard v. The State,* 110 Ala. 92; *Compton v. The State,* 110 Ala. 24; *Miller v. The State,* 107 Ala. 41; *Naugher v. The State,* 105 Ala. 26; *Holmes v. The State,* 100 Ala. 80. The charge is in substance a copy of a charge in *Holmes' Case, supra,* as to the question of retreat, which was held by us to have been properly refused, because it misplaced the burden of proof as to retreat.

Charges 27 and 28 each ignores the absence of fault, on the part of defendant, in bringing on the difficulty, and the 27th ignores, besides, the question of retreat, and they were properly refused. These charges are so different from those in *Kerr's Case,* 100 Ala. 4, and the facts in the two cases are so variant, that they find no support in the two charges which were held to be free from error in that case.

The remaining charges which were refused are of such character, and so often pronounced faulty, we deem it unnecessary to consider them. The same thing is true of the parts of the oral charge of the court, to which exceptions were taken.

Reversed and remanded.

BRICKELL, C. J., dissents from that part of the decision on the plea in abatement.