142 So. 562
**SWINNEY et al. v. STATE.**
**8 Div. 414.**

Supreme Court of Alabama.
June 2, 1932.

Rehearing Denied June 23, 1932.

274

· William Stell and H. H. Hamilton, both of Russellville, for appellants.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

## GARDNER, J.

Defendants were convicted of murder in the second degree, with punishment fixed at imprisonment for twenty-five years, under indictments charging murder in the first degree, for the killing of one Tom Hill. They were separately indicted, but tried jointly by agreement entered into in open court, and with the understanding that evidence offered as applicable only to one defendant was not to be considered as affecting the other, and the jury was so explicitly instructed. The indictments were in Code form (section 4527, Code 1923) and sufficient. Billingslea v. State, 68 Ala. 486. The demurrers thereto were properly overruled.

The deceased was found dead in his pasture about one hundred and sixty-five yards from his house, on August 5, 1931, his body lying in a sink hole where a tree had been uprooted. The blows causing death were inflicted on the head, his skull being fractured in several places. There were evidences of "two places on the left hand side of his head and one on the right, and one also over his right eye." An ordinary shovel was found some twenty or more feet away on which was human hair. The state rested largely upon the testimony of one Rich who insists he was an eyewitness (some forty or fifty yards distant) to the first blow struck deceased (on Monday, August 3, 1931), and that this blow was by one Lawler with the shovel which he took from the hands of the deceased, striking him in the face. Upon seeing this first blow struck, Rich states that he immediately turned and went home, and knew nothing of what happened thereafter. He did not see these defendants strike a blow, but they were standing there with Law-

ler, and all three were arguing with deceased who said something about a still and that he wanted them to move it, "and they were arguing about it." As to these defendants, Rich testifies, "They were arguing too." And again the witness states,, "I heard Baggett and Swinney quarreling at the time Lawler was quarreling with Mr. Hill."

As explanatory of his presence at this time, Rich was permitted to testify, over defendant's objection, that about 5 o'clock of the afternoon of August 3d, Lawler came to his home and asked that he go with him to a still, and on such invitation he went with Lawler; that upon reaching the neighborhood of the house of the deceased he and Lawler met these two defendants "north of Mr. Hill's house by the edge of the field," and further states: "They didn't want me to go any farther, they stopped me; they said they would go bring some whiskey back down there; they told me to stay there and they went off * * * left me down there about where I met up with them * * * went upon Mr. Hill's land and I saw them talking to Mr. Hill."

■ It thus appears that the presence of Lawler at the house of the witness Rich, his request to accompany him, the walk to the scene of the difficulty, and the witnessing of the first blow struck, all constituted one continuous transaction, and the evidence as to what occurred at the home of witness Rich was therefore admissible as a part of the res gestæ, and the insistence of error in this respect to this ruling is without merit. 16 Corpus Juris p. 572.

■ Rich further states that defendant Swinney threatened to kill him if he told on him. There was other evidence of incriminatory statements by defendant Swinney, but as to defendant Baggett there was only one witness, one Homer Nolen, who gave evidence of such a character, and that related to a conversation which occurred near Baggett's house between Joe Swinney and Charlie Baggett after the state witness Rich had been arrested and put in jail. Nolen testified: "We were out there and Joe turned around and asked him if he was coming to his house the next morning, and Charlie told him he guessed he could and if anything leaked out, and Joe told him not that he knew of. He said there ain't no need of coming. And he says, just wait till something leaks out and you can come to my house."

The argument against the admissibility of this evidence is based upon the insistence that it does not appear the conversation related or had reference to the murder of deceased; but we think, upon consideration of all the proof, the jury might well infer the defendants were referring to the homicide which had occurred some time before, and which had not yet been solved, and to their interest therein or connection therewith. The objection was properly overruled.

■ The conversation of the witness Wildy Lawler (Transcript, p. 41) with defendant Swinney was admissible against Swinney, and the solicitor expressly stated it was not offered as affecting defendant Baggett. This method of proof appears to have been in accord with the understanding of the parties, as we interpret the record, at the time it was agreed defendants should be jointly tried. The trial judge also cautioned the jury in his oral charge that evidence adduced particularly as to one defendant was not to be considered in determining the guilt or innocence of the other, and, also, instructed the jury in written given charges that any statements made by Swinney in the absence of Baggett were not to be considered in determining the guilt or innocence of Baggett. Doubtless the court would have so instructed the jury at the time the evidence was offered if request or suggestion to that effect had then been made, but this was not done, and we think it clear there was nothing in the ruling of which defendant Baggett can complain.

■ Defendants requested some charges based upon the theory that the state witness Rich was an accomplice or in some manner implicated in the killing. But, however great may be the suspicion entertained by defendants and their counsel as to witness Rich, there is no evidence in this record justifying this theory, and charges rested thereon were therefore properly refused.

■ Defendants also requested the affirmative charge, which was properly refused. True the witness Rich did not see them strike a blow, but, according to his evidence, they were present engaging with Lawler, who struck the first blow, in a quarrel with deceased about a matter which the jury could infer concerned all three. And in this connection should also be considered the fact that the evidence indicates several blows on the head of deceased, as to which there was no eyewitness, and the incriminatory conversation had with these defendants. Under clearly established principles of law and the authority of Jones v. State, 174 Ala. 53, 57 So. 31, a case for the jury's consideration was presented.

■ The defense, was an alibi, and many witnesses were offered in support thereof. Among defendants' witnesses was one Tom Keller, whose evidence tended to establish this defense. We read the evidence as testified to by witness D. D. Nolen and the conversation had between witness D. D. Nolen and Tom Keller as having a tendency to contradict said Keller's testimony as to where he

was with defendant Swinney. This was proper as an impeachment to that extent of the witness Keller, and was not subject to the objection it sought to impeach a witness on an immaterial issue. Henson v. State, 120 Ala. 316, 25 So. 23; James Hughes v. State, 152 Ala. 5, 44 So. 694; 28 Alabama & Southern Digest, 558, 559; Nalls v. State, 19 Ala. App. 146, 95 So. 591.

■ There are a few remaining questions relating to rulings on evidence that need no separate treatment here. In some instances the questions were subsequently answered, and the matter inquired about in evidence, without objection. In one or two instances the court might well have ruled otherwise, as illustrated in sustaining the state's objection to the defendants' question put to witness Rich on cross-examination, as to where he was the day following the killing. Cross-examination, though a valuable right and not to be too narrowly and prejudicially restricted (Mitchell v. Birmingham News Co., 223 Ala. 568, 137 So. 422), yet is a matter resting largely in the trial court's discretion (Doss v. State [Ala. Sup.] 139 So. 290),[1] and we are persuaded from a careful reading of this record no prejudice to defendants here appears.

There are a few charges, not embraced in those above noted, which were refused, but they were either faulty or covered by the court's oral charge or those given for defendants.

Though the case is stronger against Swinney than it is against Baggett, yet the evidence as to the latter was clearly for the jury, and the charge requesting his acquittal was properly refused.

■ Counsel for defendants strenuously insist that the evidence of witness Rich for the state was so improbable and unsatisfactory that a new trial should have been granted. We have given due consideration to this insistence. But the trial judge saw and heard the witnesses, and the conclusion is here reached that, guided by the well-known rule announced in Cobb v. Malone, 92 Ala. 630, 9 So. 738, the ruling of the court denying a new trial should not be here disturbed.

Upon a consideration of this record, we find no error to reverse, and the judgments of conviction must accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

[1] 224 Ala. 90. . . .